**DEVEX CORPORATION et al., Plaintiffs-Appellees,**

v.

**HOUDAILLE INDUSTRIES, INC., Defendant-Appellant.**

No. 15732.

United States Court of Appeals Seventh Circuit.

July 12, 1967.

Carlton Hill, Benjamin H. Sherman, Chicago, Ill., for appellant.

Walter J. Blenko, Arland T. Stein, Pittsburgh, Pa., William C. McCoy, Jr., Cleveland, Ohio, Frank H. Marks, Chicago, Ill., for appellees.

Before MAJOR, Senior Circuit Judge, and SWYGERT and CUMMINGS, Circuit Judges.

MAJOR, Senior Circuit Judge.

This appeal is a continuation of litigation of long duration. On November 13, 1956, plaintiffs filed their complaint against General Motors and Metal Lubricants Company for infringement of Henricks Patent Re. 24,017, dated June 7, 1955. On May 22, 1957, plaintiffs filed a companion case against the instant defendant (Houdaille Industries, Inc.), for infringement of the same patent. In both cases plaintiffs relied solely upon Claim 4. The cases were consolidated on the common issue of validity, and Judge Robson held the Henricks patent invalid. On appeal, this Court reversed, held the claim valid and remanded the case for further proceedings consistent with the opinion. Devex Corp. et al. v. General Motors Corp. et al., 7 Cir., 321 F.2d 234, cert. den. 375 U.S. 971, 84 S.Ct. 490, 11 L.Ed. 2d 418. Upon remand, the case against Metal Lubricants Company was dismissed by consent and that against General Motors, on motion by plaintiffs, was transferred to the District of Delaware.

In the instant case plaintiffs moved for a summary judgment that defendant had infringed Claim 4 of the Henricks patent, which was first denied. After further deposition testimony was taken, plaintiffs renewed their motion and on February 17, 1966, it was allowed. The case is here on defendant's appeal from this judgment.

On June 23, 1965, prior to plaintiffs' renewed motion for summary judgment, defendant, with leave of the Court, filed an amended answer setting up additional defenses, including (a) license, (b) laches, (c) prior public use by defendant, (d) shop right, (e) patent misuse, (f) intervening rights, (g) lack of continuity between the original patent and the preceding abandoned application and (h) release. The amended answer allegedly was based upon facts ascertained from the May 17, 1965 deposition of Henricks. In connection with its amended answer defendant moved for the production of documents, which was denied.

The Court in its summary judgment decreed infringement of Claim 4, enjoined defendant from further infringement and referred the case to a Special Master to hear and submit to the Court findings on the issue of damages. The judgment also provided for a determination by the Master of the affirmative defenses invoked by defendant. On March 3, 1966, defendant's motion to vacate the summary judgment was denied.

The companion case of General Motors, transferred to the Delaware District as previously shown, was heard by Judge Caleb M. Wright on plaintiffs' motion for summary judgment. In a well reasoned opinion the Court concluded that summary judgment was inappropriate and denied such relief. Devex Corp. et al. v. General Motors Corp., 263 F.Supp. 17. Concerning the Delaware case, defendant on brief states, "So far as infringement is concerned, the issues there are substantially identical with those involved here." Plaintiffs take no issue with this statement, in fact do not even mention the case although it was decided more than two months prior to the date on which plaintiffs' brief was filed in this Court, with the same counsel representing plaintiffs in both cases.

In the interest of brevity, we refer to our previous opinion written by Judge Duffy, for a history of plaintiffs' patent, its purpose and scope, the claim relied upon and the reasoning on which validity was sustained.

At the inception we are met with plaintiffs' challenge that the order under attack is not appealable and should be dismissed. Defendant responds that we have jurisdiction under Par. (a) (1) or (4) of Sec. 1292, Title 28 U.S.C.A. The former provides jurisdiction of an appeal from an order granting an injunction, the latter from judgments for patent infringement which are final except for accounting. Plaintiffs cite a number of cases in support of the point that "an appeal from an interlocutory order grant-

ing an injunction brings up for review nothing but the propriety of granting the injunction," and such appeal "does not bring up for review those parts of the decree which affect only the reference to a Master and bear no necessary relation to the merits of the injunction."

In Loew's Drive-In Theatres, Inc. v. Park-In Theatres, Inc., 1 Cir., 174 F.2d 547, 550, the Court stated:

"Our jurisdiction over this cause of action on appeal, however, is another matter. For although injunctive relief is granted in the judgment appealed from and we have appellate jurisdiction over such judgments under 28 U.S.C.A. Sec. 1292 (1) even though interlocutory, we have jurisdiction to review only that part of such judgments as have to do with the injunctive relief afforded and no other."

In Racine Engine & Machinery Co. v. Confectioners' Machinery & Mfg. Co., 7 Cir., 234 F. 876, 878, speaking to the same point, this Court stated:

" * * * if and after the patent is sustained, infringement found and injunction awarded, upon appeal this court may finally determine the validity of the patent, and its determination is binding on the District Court."

 These and other cases cited by plaintiffs recognize that a court with jurisdiction to hear an appeal from an injunction order must necessarily have jurisdiction to consider the propriety of the premise upon which the injunction issued. As applied to the instant case, our authority to consider the propriety of the injunction carries with it the authority to consider the infringement issue upon which the injunction issued. It may be that we are without authority to consider the affirmative defenses interposed by defendant prior to the entry of the summary judgment and referred to the Master for decision. We need not be concerned in this regard, however, be-

cause, assuming we have such authority, we would not be disposed to exercise it in the absence of a ruling by the court below on such issues. We hold that we have jurisdiction of the appeal from the injunction order and of the infringement issue upon which it is predicated.

 Plaintiffs also contend that defendant has no standing to complain of the order enjoining it from further infringement, on the basis that it consented to and openly invited its entry, thereby waiving any right to complain of error. We see no reason to cite or discuss the cases cited in support of this contention. They are without application to the facts of the case.

In this connection plaintiffs place much emphasis on the assertion that the judgment order was proposed by defendant. True, it was so labeled, but there clearly emerges, on a confusing record, the fact that defendant did not consent to or invite the order, particularly that part which enjoined it from further infringement. Plaintiffs attached to their original and again to their renewed motion for summary judgment a form of proposed judgment. The Court in an oral decision granted plaintiffs' renewed motion and, at the Court's suggestion, plaintiffs submitted a revised form of judgment. On February 16, 1966, defendant served on plaintiffs a "Notice of Motion," notifying them that defendant *without waiving any rights* will present the attached draft of a judgment order." The February 17 order alleged to have been proposed by defendant was presented to the Court, "approved as to form." [1]

Defendant in no way consented to the injunction or waived its opposition thereto; its activities were confined to limitations on the forms of judgments submitted by plaintiffs. Moreover, defendant subsequently attacked the entire judgment order by its motion to vacate, which was denied March 3, 1966. Plain-

---

1. Neither on brief nor in their appendix offered in support thereof do plaintiffs reveal that defendant's order was proposed "without waiving any rights" and was "approved as to form" only.

tiffs' argument on this phase of the case is entirely without merit.

■ Preliminary to any discussion of the narrow issue for decision, we must keep in mind that it is not within our province to make a determination on factual issues. The sole question is whether plaintiffs under Rule 56(c), Federal Rules of Civil Procedure, were entitled to a summary judgment and thereby precluded defendant of the right to a hearing. The citation of only a few of the many cases which have announced the criterion to be employed in resolving such question will suffice.

In Poller v. Columbia Broadcasting System, Inc., et al., 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458, the Court stated:

"This rule authorizes summary judgment 'only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, * * * [and where] no genuine issue remains for trial * * [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try.'"

The Court further stated (page 473, 82 S.Ct. page 491):

"We look at the record on summary judgment in the light most favorable to Poller, the party opposing the motion, and conclude here that it should not have been granted."

In National Screen Service Corp. v. Poster Exchange, Inc., 5 Cir., 305 F.2d 647, 651, the Court stated:

"The rule should be invoked cautiously in order to allow a full trial where there is a bona fide dispute of facts between the parties. Summary judgment should be granted only where the moving party is entitled to judgment as a matter of law, *where it is quite clear what the truth is,* when no genuine issue remains for trial, and it is not the purpose of the rule to deny to litigants a right of trial if they really have issues to try. [Citing cases.] It is no part of the duty of

the Court to decide factual issues, but only to determine whether there are factual issues to be tried [Citing case.]

" * * * A long line of cases have held that summary judgment should not be granted if there is the 'slightest doubt' as to the facts; which is actually another way of stating that there is no genuine issue as to any material fact. The fact that it may be surmised that the party against whom the motion is made is unlikely to prevail at the trial is not sufficient to authorize summary judgment against him."

■ Among other cases which have emphasized that caution is to be exercised in granting summary judgment are two of this Court. American Securit Co. v. Hamilton Glass Co., Inc., 7 Cir., 254 F.2d 889, 892, and Technograph Printed Circuits, Ltd. v. Methode Electronics, Inc., 7 Cir., 356 F.2d 442, 446.

After much study of the voluminous record, we conclude that the Court erred in allowing plaintiffs' motion for summary judgment. We think defendant is entitled to a trial on the infringement issue, as well as any relevant issue raised by its amended answer. While Judge Robson in his opinion (not published) discusses the restrictions placed by this Court on Claim 4 as a basis for our holding of validity, it seems to us that he mistakenly based his conclusion on a literal reading of the claim. In his opinion he states, "As plaintiffs point out, there can be little question that defendant's practice responds to Claim 4, so as to constitute infringement thereof." Following this statement he analyzes the claim element by element, concludes that defendant's process responds to each of said elements and states, "The Court therefore concludes that the plaintiffs' renewed motion for summary judgment should be granted * * *; that there should be a finding of infringement by the defendant of Claim 4 of the Reissue Patent No. 24,017, upon the basis of defendant's answers to the interrogatories and the depositions heretofore filed."

Concerning the holding of Judge Robson, plaintiffs on brief state:

" * * * he held that Houdaille's attempts to avoid a finding of infringement by reading the claim restrictively was not warranted by the language of that opinion [321 F.2d 234], or by the language of the claim itself."

For reasons subsequently shown, we think this is a fallacious approach to the infringement issue. Our previous decision requires that the claim in suit be given a narrow and restricted construction.

We need not give any consideration to the prior art which Judge Robson in the first hearing considered and upon which he found Claim 4 invalid. In our previous decision (321 F.2d 234), reversing his holding of invalidity we stated (page 236):

"Plaintiffs concede all of the elements which Henricks employed in Claim 4 in the patent in suit were old *per se* or in other combinations and have been available in the art for some years. However, plaintiffs contend that the elements which Henricks selected were put together in a new way and achieved a new and unexpected result."

Thus, it was conceded that all of the elements of the claim were old in the art, but plaintiffs sought to uphold validity upon the basis that such elements "were put together in a new way and achieved a new and unexpected result." It was solely on this basis that this Court sustained validity and reversed the District Court. In this connection we stated (page 237):

"Plaintiffs argue that new and unexpected results flow from the conjunction of elements defined in the drawing process of the Henricks' patent; that tool and die life is greatly increased and severe drawing operations can now be performed which were previously impossible. Plaintiffs say there is a coaction during the high temperatures and pressures whereby the abrasive phosphate coating reacts with the borax to form amorphous glassy materials which contribute significantly to the lubricating value of the coating; that the formation of insoluble organic materials is inhibited and there is no cleaning problem.

"There is substantial evidence in the record to prove that a new coaction between the soap, borax and phosphate occurred during the drawing process. Friedberg's tests showed that in the Henricks' process, new compounds are formed; the formation of insoluble organic compounds is inhibited, and the abrasive phosphate is transformed into a glassy amorphous compound having highly effective lubricating properties."

We further pointed out that there was testimony that by use of the process "tool and die life was increased one thousand fold" and that the process made it possible "to manufacture articles of superior quality at a much lower cost."

It is difficult to discern how plaintiffs can contend with any plausibility that defendant is an infringer, based upon a literal reading of the claim. In the previous case plaintiffs urged as a ground for sustaining validity a narrow and restricted application of the "specific embodiment of Claim 4." On brief they state:

"Specifically, there is a coaction during the high temperatures and pressures of the drawing process whereby the abrasive phosphate coating reacts with the borax to form amorphous glassy materials which contribute significantly to the lubricating value of the coating. The formation of insoluble organic materials is inhibited and there is no cleaning problem."

They also relied on "new and surprising results" to meet the test of Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162. Thus, having obtained a decision of validity on a narrow and restricted basis, they now contend, inconsistently we think, that the claim must be applied literally to de-

fendant's alleged infringing process. Such a construction would monopolize the whole broad field of metal forming with any use of a dry soap and borax over phosphate at any temperature or pressure, regardless of the results.

Judge Wright of the Delaware Court in the *General Motors* case (263 F.Supp. 17) followed the decision of this Court in sustaining the validity of Claim 4 (that here involved) but disagreed with Judge Robson in allowing plaintiffs' motion for summary judgment. In his opinion he pointed out numerous unresolved factual issues which formed the basis for his denial of plaintiffs' motion for a summary judgment. Without restating the issues which he discussed, it is significant to note that he refused, on the issue of infringement, to give effect to a literal reading of Claim 4. Instead, he held that the restrictions placed upon the claim by this Court in sustaining validity must be taken into account. In so doing he stated (page 25):

> " * * * the construction of a claim when its validity is contested controls the construction of that same claim when its infringement is alleged. The patentee cannot urge a restrictive interpretation of his claim to avoid invalidity and then an expansive interpretation to ensnare infringers."

This principle has been recognized by this Court. In Fife Mfg. Co. v. Stanford Engineering Co., 7 Cir., 299 F.2d 223, 226, we stated:

> "It is well settled that a patent owner may not apply a narrow construction to his claim to avoid the prior art and then apply a broad construction to include an accused device."

See also Wire Tie Machinery Co. et al. v. Pacific Box Corp. et al., 9 Cir., 107 F.2d 54, 55.

The "new and unexpected result" which plaintiffs urged upon this Court in their argument in behalf of validity, to which we gave recognition, certainly was not revealed by a literal reading of Claim 4. In fact, we can surmise with some

assurance that if a literal reading of the claim had been relied upon, we would have affirmed the District Court in its holding of invalidity in view of the prior art. The patentee's thesis of "new and unexpected result" was based upon the addition to the patent specifications of Examples XIX and XX, filed October 31, 1950, in connection with his continuation-in-part application, Serial No. 413,-490. These Examples, which gave formulas for soap and borax over phosphate, were included in the patent issued March 4, 1952 and, as stated by plaintiffs on brief, "By issuance of this patent, the Henricks applications were first made available to the public and thereby, for the first time, became public knowledge."

Based upon Examples XIX and XX, the Friedberg tests were made, which formed the basis of this Court's statement that there was evidence of a "new coaction between the soap, borax and phosphate during the drawing process." Judge Wright on this point stated (page 25):

> "The Friedberg tests involved draws conducted under high pressures involving severe deformation of the metal, whereas the GM operation involves much lower pressures. And Henricks, the patentee, himself stated that it is a high pressure operation generating sufficient heat to thaw the meltable pigment which forms a part of his invention. The Court requires the aid of expert testimony to determine whether these differences are, or are not, important."

In the instant case, as in General Motors, there is evidence that the patentee's process recognized by this Court required "extreme temperatures and pressures of from 100,000 to 250,000 pounds Hertz stress." There is also evidence that defendant's alleged infringing process requires pressures of only "10 to 25,000 pounds Hertz stress." Moreover, the tests relied upon were made in the drawing of wire rods. Plaintiffs had the burden of proof upon a disputed

issue as to whether the same result would have been obtained in the drawing of defendant's alleged infringing automobile bumpers.

While these issues are not all inclusive, we think they alone are such as to negate the propriety of a summary judgment.

We might with propriety conclude our opinion at this point. Even so, we think we should discuss the issue of "intervening rights," relied upon by defendant as a defense to the charge of infringement. As already noted, defendant on June 23, 1965, after having first obtained leave of the Court, filed an amended answer setting forth a number of affirmative defenses. (Of such defenses only "intervening rights" is argued here.) Plaintiffs on brief refer to these defenses as "last minute affirmative defenses," even though the amended answer was filed prior to the filing of plaintiffs' second motion for summary judgment. No attack was made upon such defenses by motion to dismiss the answer or otherwise.

Judge Robson in his bench discussion stated:

"The Court is of the opinion that on this remand it is not within its province to reassess the validity of the patent as it might be affected by the defense of prior public use."

This statement no doubt was based upon the finding of this Court in its previous opinion that the patentee's record date of invention was April 29, 1946, since Claim 4 is identical to Claim 45 allowed by the Patent Office, and defendant may not now assert the October 31, 1950 date. (321 F.2d 234, 235.)

It is not claimed that our holding relative to public use in connection with the issue of validity is *res adjudicata* with reference to the defense of intervening rights to the charge of infringement. The District Court did not so decide but instead referred the issue to the Master for decision. In doing so, the Court stated:

"In view of the findings here, I think the affirmative defenses, and I am aware of them, will more or less fall by the wayside and it would be a matter of a reference to the Master, but certainly I am willing to consider any and all matters which may be concerned."

We doubt the propriety of such reference, see Prepo Corp. v. Pressure Can Corp., 7 Cir., 234 F.2d 700, 704, but need not dwell on the point inasmuch as the judgment is to be reversed.

On the state of the record shown, we think it plain that the issue relating to the defense of "intervening rights" remains before the Court and must be resolved on the record made in this case, which is quite different from that previously before this Court.

There is evidence that defendant commenced use of the alleged infringing process as early as April 25, 1949, more than one year prior to the filing of the continuation-in-part application upon which was issued Patent No. 2,588,234, dated March 4, 1952, from which the reissue patent in suit was issued June 7, 1955. Thus, defendant contends that the coaction on which this Court found inventiveness (a soap-borax fixed film over an integral phosphate coating) was not disclosed by Henricks in his earlier but abandoned application; in fact, it was first disclosed in his continuation-in-part application filed October 31, 1950, which matured into the patent in suit.

■ As previously shown, "the new and unexpected result" which plaintiff urged upon this Court followed the disclosures in Examples XIX and XX, first made a part of the patent specifications filed October 31, 1950. In fact, Henricks on deposition so admitted. He was asked, "What I am trying to understand, Mr. Henricks, is this: you had no soap-borax over phosphate in your abandoned application?" and he answered, "Correct." Plaintiffs attempt to bridge this gap by arguing that in the abandoned application the "glyceryl borate" was "fully equivalent" to the soap and borax. Whether Henricks' 1946 disclosure was the equivalent of

that made in 1950, upon which he obtained an adjudication of validity, is an issue of fact. Graver Tank & Mfg. Co., Inc., et al. v. Linde Air Products Co., 339 U.S. 605, 609, 70 S.Ct. 854, 94 L.Ed. 1097. Moreover, the issue is one for expert testimony.

Also material to the issue under discussion is a matter presented by defendant as newly discovered evidence in connection with its motion to vacate the judgment. On October 29, 1951, Henricks filed with the Canadian Patent Office his application for a patent entitled "Method of Drawing Metal," which was allowed. In the Canadian application Henricks stated that he was entitled to the October 31, 1950 United States filing date under Treaty or Convention Rights of Applicants as it "relates to all claims," because the United States 1950 application was " * * * the first application for patent for the *said invention filed in any country by him or anyone claiming under him.*"

The specifications, including Examples XIX and XX, and the claims, including Claim 4 in suit, of the Canadian patent were identical with the 1950 United States application. Thus, Henricks represented to the Canadian Patent Office that his 1950 United States application disclosed for the first time the soap-borax-over-phosphate, the premise upon which this Court sustained validity.

Plaintiffs on brief make no denial of the facts just recited relative to the proceedings in the Canadian Patent Office. They state:

"On October 29, 1951, Henricks filed a corresponding Canadian patent application. That application made reference to the continuation-in-part application filed in the United States on October 31, 1950 *for the purpose of obtaining a prior date of invention* under the International Convention and Canadian law insofar as the material in the continuation-in-part application *may* have been added as '*new*

*matter*'. As to that material which *may not* have been added as '*new matter*' in the continuation-in-part application, Henricks is relegated to his filing date in Canada for his date of invention insofar as the Canadian patent is concerned." (Italics supplied.)

This is an admission that Henricks represented to the Canadian Patent Office, apparently for a self-serving purpose, that the disclosure made in his 1950 application in the United States "may have been added as 'new matter.'" The "new matter" referred to, as we understand, consisted of the disclosure made for the first time in Examples XIX and XX of Henricks' 1950 application, which enabled plaintiffs to obtain the "new and unexpected result" urged upon this Court.

Plaintiffs on brief, following the statement lastly quoted, further state:

"The reference in the Canadian application to the 1950 United States application had no effect upon Henricks' United States patent applications."

We think the accuracy of this statement is open to doubt. Assuming it to be correct, however, it misses the point. The fact that he made an admission to the Canadian Patent Office as to the date of his patent disclosure contrary to that which he previously made to this Court, in which he now persists, relates to his credibility and presents a matter for consideration by the trier of the facts.

We decide nothing more than that summary judgment was improvidently allowed. Anything we have said is not to be construed as a resolution of any factual issue. We have attempted only to point out some of the issues of material fact which, in our judgment, entitle the parties to a hearing.

The judgment appealed from is reversed and the cause remanded for that purpose.