This Opinion is a
Precedent of the TTAB

Mailed: February 17, 2023

UNITED STATES PATENT AND TRADEMARK OFFICE

____

Trademark Trial and Appeal Board

____

*In re Mission America Coalition*

____

Serial No. 90019480

____

Harold L. Novick of Novick Kim & Lee PLLC
   for Mission America Coalition.

Jaime Batt, Trademark Examining Attorney, Law Office 125,
   Heather Biddulph, Managing Attorney.

____

Before Cataldo, Lynch and Johnson,
   Administrative Trademark Judges.

Opinion by Cataldo, Administrative Trademark Judge:

Applicant, Mission America Coalition, dba The Table Coalition, filed an application for registration on the Principal Register of THE TABLE COALITION as a collective membership mark (in standard characters, "COALITION" disclaimed), identifying the following services:

> Indicating membership in a(n) to indicate membership in [sic] a group of church leaders, senior church members, ministers, independent evangelical preachers, and other

> evangelical principals to promote and support evangelistic
> activities, in International Class 200.[1]

The Trademark Examining Attorney refused registration of Applicant's mark under Trademark Act Sections 1, 4 and 45, 15 U.S.C. §§1051, 1054, and 1127, for failure to function as a mark "on the ground that applicant has failed to show use in commerce of the applied-for mark by a member to indicate membership in a collective organization."[2]

When the refusal was made final, Applicant appealed the refusal of registration. Applicant later requested a remand for consideration of additional evidence, which the Board granted.[3] The Examining Attorney denied reconsideration, and the appeal resumed.[4] We affirm the refusal to register.

## I. Collective Marks

Section 4 of the Trademark Act provides for the registration of collective marks by applicants "exercising legitimate control over the use of the marks sought to be registered, even though not possessing an industrial or commercial establishment,

---

[1] Application Serial No. 90019480 was filed on June 24, 2020, based on Applicant's assertion of use of the mark in commerce since October 2019 under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a).

[2] Examining Attorney's brief, 16 TTABVUE 1. The Examining Attorney's reference to Section 2, 15 U.S.C. §1052, as a basis for the refusal of registration (16 TTABVUE 3) is inapplicable inasmuch as Applicant seeks registration of a collective membership mark and not a trademark.

Page references to the application record refer to the online database pages of the USPTO's Trademark Status & Document Retrieval (TSDR) system. References to the briefs on appeal refer to the Board's TTABVUE docket system. Before the TTABVUE designation is the docket entry number; and after this designation are the page references, if applicable.

[3] 11 TTABVUE.

[4] 13 TTABVUE.

and when registered they shall be entitled to the protection provided in this chapter

… ." 15 U.S.C. §1054.

The term "collective mark" is defined as:

> [A] trademark or service mark (1) used by the members of a cooperative, an association, or other collective group or organization, or (2) which such cooperative, association, or other collective group or organization has a bona fide intention to use in commerce and applies to register on the principal register established by this chapter, and includes marks indicating membership in a union, an association, or other organization.

15 U.S.C. §1127.

In *Aloe Crème Labs., Inc. v. Am. Soc'y for Aesthetic Plastic Surgery, Inc.*, 192 USPQ 170, 173 (TTAB 1976), the Board characterized the different types of collective marks as follows:[5]

> There are two basic types of collective marks. A **collective trademark or collective service mark** is a mark adopted by a "collective" (i.e., an association, union, cooperative, fraternal organization, or other organized collective group) for use only by its members, who in turn use the mark to identify their goods or services and distinguish them from those of nonmembers. The "collective" itself neither sells goods nor performs services under a collective trademark or collective service mark, but the collective may advertise or otherwise promote the goods or services sold or rendered by its members under the mark. A **collective membership mark** is a mark adopted for the purpose of indicating membership in an organized collective group, such as a union, an association, or other organization. Neither the collective nor its members uses the collective membership mark to identify and distinguish goods or services; rather, the sole function of such a mark is to indicate that the person displaying the mark is a member of the organized collective group. For example, if the collective group is a fraternal organization, members may display the mark by wearing pins or rings upon which the mark appears, by carrying membership cards bearing the mark, etc. *Cf. Ex parte The Supreme Shrine of the Order of the White Shrine of Jerusalem*, 109 USPQ 248 (Comr., 1956); and Notes From the Patent Office (United States Trademark Association, 1965), 3,

---

[5] Emphasis in original.

Part 2, Note 1-3 through 1-5. Of course, a collective group may itself be engaged in the marketing of its own goods or services under a particular mark, in which case the mark is not a collective mark but is rather a trademark for the collective's goods or service mark for the collective's services.

This appeal involves a "collective membership" mark.

The sole purpose of a collective membership mark is to indicate membership in an organization. While goods or services may be provided by the members of an organization, a collective membership mark, as used or displayed by the members of an organization, serves only to identify the fact that such members belong to the collective organization and to inform relevant persons of the members' association with the organization.

*In re Code Consultants Inc.*, 60 USPQ2d 1699, 1700 (TTAB 2001). *See generally*, TRADEMARK MANUAL OF EXAMINING PROCEDURE (TMEP) § 1304 (July 2022) and authorities cited therein. Use of a collective membership mark must be by its members. *In re Triangle Club of Princeton Univ.*, 138 USPQ 332 (TTAB 1963) (collective membership mark registration denied because specimen did not show use of mark by members).[6]

The TMEP provides the following instruction regarding the submission of an acceptable specimen in an application for a collective membership mark:

The owner of a collective membership mark exercises control over the use of the mark but does not itself use the mark to indicate membership. Therefore, a proper specimen of use of a collective membership mark must show use by members to indicate membership in the collective organization. 37 C.F.R. §2.56(b)(4); *In re Int'l Ass'n for Enterostomal Therapy, Inc.*, 218 USPQ 343 (TTAB 1983); *In re Triangle Club of Princeton Univ.*, 138 USPQ 332 (TTAB 1963).

---

[6] The Trademark Act permits use of the same mark as a membership mark by members and also as a trademark or service mark by the parent organization. *See* TMEP §1303.01(a)(i) and authorities cited therein.

The most common types of specimens are membership cards and certificates. The applicant may submit as a specimen a blank or voided membership card or certificate.

For trade or professional associations, decals bearing the mark for use by members on doors or windows in their establishments, wall plaques bearing the mark, or decals or plates for use, e.g., on members' vehicles, are satisfactory specimens. If the members are in business and place the mark on their business stationery to show their membership, pieces of such stationery are acceptable. Flags, pennants, and banners of various types used in connection with political parties, club groups, or the like could be satisfactory specimens.

Many associations, particularly fraternal societies, use jewelry such as pins, rings, or charms to indicate membership. *See In re Triangle Club of Princeton Univ., supra.* However, not every ornamental design on jewelry is necessarily an indication of membership. The record must show that the design on a piece of jewelry is actually an indication of membership before the jewelry can be accepted as a specimen of use. *See In re Inst. for Certification of Computer Prof'ls*, 219 USPQ 372 (TTAB 1983) (in view of contradictory evidence in record, specimen with nothing more than CCP thereon was not considered evidence of membership); *In re Mountain Fuel Supply Co.*, 154 USPQ 384 (TTAB 1967) (design on specimen did not indicate membership in organization, but merely showed length of service).

Shoulder, sleeve, pocket, or similar patches, or lapel pins, whose design constitutes a membership mark and which are authorized by the parent organization for use by members on garments to indicate membership, are normally acceptable as specimens. Clothing authorized by the parent organization to be worn by members may also be an acceptable specimen.

A specimen that shows use of the mark by the collective organization itself, rather than by a member, is not acceptable. Collective organizations often publish various kinds of printed material, such as catalogs, directories, bulletins, newsletters, magazines, programs, and the like. Placement of the mark on these items by the collective organization represents use of the mark as a trademark or service mark to indicate that the collective organization is the source of the material. The mark is not placed on these items by the parent organization to indicate membership of a person in the organization.

TMEP §1304.02(a)(i)(C).

The TMEP further provides clarification regarding use of trademarks and service marks by collective organizations themselves, as opposed to collective marks or collective membership marks.

> A collective organization may itself use trademarks and service marks to identify its goods and services, as opposed to collective trademarks and service marks or collective membership marks used by the collective's members. *See B.F. Goodrich Co. v. Nat'l Coops., Inc.*, 114 USPQ 406 (Comm'r Pats. 1957) (mark used to identify tires made for applicant cooperative and sold by its distributors is a trademark, not a collective mark that identifies goods of applicant's associated organizations; applicant alone provides specifications and other instructions and applicant alone is responsible for faulty tires).

TMEP §1305.

## II. Refusal of Registration Under Trademark Act Sections 1, 4 and 45

### A. Arguments

Applicant submitted as a specimen with its application both sides of the business card of its Director of Ministry, Deena Kvasnik. The specimen is reproduced below.



In response to the Examining Attorney's rejection of the specimen in the first Office Action, Applicant submitted the declaration of Deena Kvasnik and a blank copy of an agenda used in its meetings, both reproduced below.[7]

---

[7] April 5, 2021 Response to Office Action at 5-7.

**IN THE UNITED STATES PATENT AND TRADEMARK**

Applicant: Mission American Coalition

Filing Date: June 24, 2020                    TMEA: BATT, JAIME L

Serial No.: 90019480                          Law Office: 125

Mark: THE TABLE COALITION                     Atty. Ref. TN0611775

Declaration of Deena Kvasnik

I, Deena Kvasnik, declare and say as follows:

1. I am over the age 21, am knowledgeable about Applicant, and am competent to testify in this matter.

2. I am Director of Ministry of Applicant and as such I am responsible for planning the meetings and docket of the meetings of Applicant. I also have a responsibility for soliciting and retaining membership in Applicant.

3. Applicant is comprised of a group of independent church leaders, senior church members, ministers, evangelical preachers, and other evangelical principals in evangelistic activities.

4. Attached as Attachment A is my business card (the specimen in the application) which I use to present to potential members at the time I am soliciting their membership. My business card clearly states the function and mission of the coalition, "Gospel Relationship In Action." Thus, my card reflects certification of origin and purpose of the organization.

5. I have used the mark in association with the organization by actually giving my business card to a number of individuals and have been successful in recruiting new members by using it.

6. In order to maintain control of the mark, periodic meetings of the members are scheduled and organized by submitting to the members a meeting agenda bearing the mark, a redacted version of which is attached as Attachment B. By verbal agreement with the members, the mark is not to be used except to indicate membership in the organization.

7. Further control of the mark is accomplished by sending emails bearing the mark.


I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States

Code and that such willful false statements may jeopardize the validity of the application or any registration issued thereon.

Respectfully submitted,

Date: 4/2/21

Deena Kvasnik
Director of Ministry
Mission American Coalition

## THE TABLE ☐ COALITION

November 17, 2020 2:00PM to 3:30PM CT

| Board: | (Chair), | (Vice Chair), | (Treasurer), | (Secretary), |
|---|---|---|---|---|
| (Director), | (Director), | (Director), | (Director), | (Director), |
| (Director), | (Ex Officio), | (Director), | (Director), | (Director), |
| (Director), | (Director) | | | |

Guest:

2:00 - Welcome/Call to Order...........................................................................................................

2:05 - Roll Call.....................................................................................................................................

2:10 - Devotions...................................................................................................................................

2:25 - Approval of Minutes..................................................................................................................

      August 12, 2020 (document)

2:30 - Approval of 2021 Housing Allowances (documents)....................................................................

2:35 - President's Report.......................................................................................................................

      1) Ministry update

      2) Board restructure proposal + discussion (documents)

3:15 - Financial Report (documents).....................................................................................................

3:25 - Adjournment..............................................................................................................................

3:30 - Closing Prayer............................................................................................................................

The Examining Attorney argues that "the specimen of record shows use of the mark by the parent organization, and not by a member of the organization to indicate

membership in the organization,"[8] and further that Ms. Kvasnik's declaration confirms she is an officer of Applicant, and she uses the business card comprising the specimen to solicit new members.[9] The Examining Attorney concludes that "both the contact information provided on the business card and the stated use of the business card in the declaration establish the business card at issue is used by the parent organization and not by a member."[10]

Applicant argues that its specimen

> was presented by a member of the organization to prospective members. The requirement is that the specimen must be used to indicate membership. By its very nature, a business card issued by an organization shows membership. A user of a business card indicates that the bearer of the card is a representative of the organization. Non-members may not use a business card because the organization does not encompass the non-member. Hence, by logic, a user of an organization[']s business card shows use to indicate membership.[11]

Applicant further argues:

> It seems that the sole consideration is whether a declaration by a member can be used to validify the use and appropriateness of the specimen. According to TMEP §1304.03 the registration is based on the actual use of the membership mark. It is submitted that the comments

---

[8] Examining Attorney's brief; 16 TTABVUE 4.

[9] *Id*.

[10] *Id*. at 4.

[11] Applicant's brief; 14 TTABVUE 3. Applicant's attachment of a copy of its specimen of record and Ms. Kvasnik's declaration to its brief (at 5-8) was duplicative and unnecessary. *In re Information Builders Inc.*, 2020 USPQ2d 10444, at *2 n.4 (TTAB 2020) (attaching previously submitted evidence to an appeal brief is unnecessary and impedes efficient disposition of the appeal by the Board; direct citation to evidence in the record is strongly preferred), *appeal dismissed*, No. 20-1979 (Oct. 20, 2020); *In re Allegiance Staffing*, 115 USPQ2d 1319, 1323 (TTAB 2015) (practice of attaching to appeal brief copies of the same exhibits submitted with responses is discouraged).

of the member user promoting the organization to another is also incorporated into the mark itself.[12]

B. Analysis

The business card submitted by Applicant as its specimen of record displays on one side THE TABLE COALITION along with the wording "GOSPEL RELATIONSHIP IN ACTION" and stylized geometric designs, some of which suggest a cross. The other side of the business card also displays stylized crossed rectangles, identifies Deena Kvasnik as Applicant's Director of Ministry, and includes her email address (deena@thetablecoalition.org), a telephone number presumably for Ms. Kvasnik, and Applicant's website address (www.thetablecoalition.org).

Applicant argues that Ms. Kvasnik is a member of Applicant's organization; and presents her business card to potential members to solicit their membership in Applicant; and further that her business card, "based on the way it is presented to others does show that it was submitted on behalf of the organization and did indicate membership in an organization."[13] However, Ms. Kvasnik does not aver in her declaration that she is a member of Applicant, and her business card clearly indicates that she holds the position of Applicant's Director of Ministry. *Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 127 USPQ2d 1797, 1799 (Fed. Cir. 2018) ("Attorney argument is no substitute for evidence."). Further, the email and website addresses on her business card clearly point to Applicant, rather than indicating membership in a

---

[12] *Id.* at 3-4.

[13] April 5, 2021 Response to Office Action at 5.

collective organization. The blank meeting agenda displayed above also identifies Ms. Kvasnik as an officer of Applicant, and not a member.

Thus, Applicant's specimen – the business card of one of Applicant's officers – shows use of THE TABLE COALITION by Applicant, not as a collective membership mark by **members of Applicant's organization**, "to inform relevant persons of the members' association with the organization." *In re Code Consultants Inc.*, 60 USPQ2d at 1700.

While Ms. Kvasnik declares she has successfully recruited new members, the record does not support a finding that THE TABLE COALITION is a membership mark used **by members of Applicant's organization**. Rather, the specimen, declaration and record as a whole suggests **Applicant's** use of THE TABLE COALITION as a service mark. The blank meeting agenda form submitted by Applicant further supports use of THE TABLE COALITION **by Applicant** during meetings with its members, but does not show use by the members.

Applicant's specimen of record, even viewed in light of the supporting evidence, may show use of THE TABLE COALITION as a service mark by Applicant, but not as a collective membership mark used by members to indicate membership in Applicant's organization.

C. Conclusion

In view of the foregoing, we find that Applicant's specimen of record fails to show use of THE TABLE COALITION as a collective membership mark in connection with the identified services.

**Decision**: The refusal to register Applicant's proposed THE TABLE COALITION mark under Trademark Act Sections 1, 4 and 45, 15 U.S.C. §§1051, 1054 and 1127, for the failure of Applicant's specimen to indicate membership in a collective organization is affirmed.