764 F.2d 1466
 CABLE HOLDINGS OF BATTLEFIELD, INC., Plaintiff-Appellant,
v.
William J. COOKE, Lookout Cable Services, Inc., the Town of
Fort Oglethorpe, Georgia, the City of Chickamauga,
Georgia, and Walker County, Georgia,
Defendants-Appellees.
 No. 84-8445.
 United States Court of Appeals,
Eleventh Circuit.
 July 9, 1985.
 
 Sam F. Little, Dalton, Ga., Howard Graff, New York City, for plaintiff-appellant.
 Ronald C. Goulart, Ft. Oglethorpe, Ga., for Town of Ft. Oglethorpe, Ga.
 Joseph E. Willard, Rossville, Ga., for Wm. Cooke.
 Larry D. Ruskaup, Rossville, Ga., for Lookout Cable.
 William Ralph Hill, LaFayette, Ga., for City of Chickamauga.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before KRAVITCH and JOHNSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.
 KRAVITCH, Circuit Judge:
 
 
 1
 This case involves the efforts of the plaintiff cable television company to enforce what it alleges to be valid, "exclusive" franchises to operate cable television systems within certain areas in north Georgia. Plaintiff commenced an action in federal district court against a competing company, its principal owner, and three local governmental entities, seeking a declaratory judgment that plaintiff's franchises are indeed valid and "exclusive," injunctive relief, and actual and punitive damages. The defendants counterclaimed, asserting various contract, tort, antitrust, securities, and Sec. 1983 claims. Before us is plaintiff's interlocutory appeal from an order that, inter alia, granted partial summary judgment in favor of three of the five defendants, granted a motion filed by three of the defendants to dissolve a preliminary restraint, and denied plaintiff's motion for a preliminary injunction.
 
 
 2
 We hold that 28 U.S.C. Sec. 1292(a)(1) confers upon this court jurisdiction to review those portions of the order dissolving the preliminary restraint and denying the preliminary injunction. In addition, under the circumstances of this case, we choose to exercise our pendent jurisdiction and review the grant of partial summary judgment in favor of the three defendants. We vacate the grant of partial summary judgment and the dissolution of the preliminary restraint, affirm the denial of the preliminary injunction, and remand for further proceedings.
 
 I. FACTS AND PROCEDURAL HISTORY
 
 3
 Battlefield Cablevision Inc. ("Battlefield") is a corporation organized under the laws of Georgia for the purpose of operating cable television (CATV) systems.[1] In June, 1971, Walker County, Georgia, granted Battlefield the "exclusive" right to construct and operate a CATV system within the county for a period of 15 years, with a 10-year renewal option. In September, 1972, the town of Fort Oglethorpe and the city of Chickamauga, both Georgia municipalities, granted Battlefield similar "exclusive" rights. Battlefield operated CATV systems within the three areas until 1980. On June 3, 1980, Battlefield, and the "exclusive" franchises held by it, were acquired by Cable Holdings of Battlefield, Inc. ("Cable Holdings"). Walker County and Fort Oglethorpe enacted ordinances approving this change of ownership.
 
 
 4
 In 1983, William Cooke, who previously had been a part owner of Battlefield, formed Lookout Cable Services, Inc. ("Lookout"), a Georgia corporation organized for the purpose of operating CATV systems. In April of that year, Lookout submitted to Fort Oglethorpe a proposed ordinance granting Lookout the right to construct and operate a CATV system in the town, in competition with Cable Holdings' system. The ordinance was read and approved by the town's mayor and council members.[2] Lookout also applied to Walker County for a CATV franchise. On June 8, 1983, the county granted the application. One week later, Lookout applied to Chickamauga for a CATV franchise. In mid-July, the city denied the application, believing that such a franchise would contravene the terms of Cable Holdings' "exclusive" franchise.
 
 
 5
 Meanwhile, on June 7, 1983, Cable Holdings filed an eleven-count lawsuit against Lookout, Cooke, and Fort Oglethorpe in the United States District Court for the Northern District of Georgia. Cable Holdings sought (1) a declaration of rights under its "exclusive" franchise with Fort Oglethorpe and federal antitrust laws, (2) an order requiring Fort Oglethorpe to abide by the terms of the franchise agreement, (3) an injunction preventing Fort Oglethorpe from granting a competing CATV franchise to Cooke or Lookout, (4) unspecified actual damages, and (5) $1,000,000 in punitive damages. Cable Holdings also moved for a preliminary injunction preventing Fort Oglethorpe from granting a CATV franchise to Cooke or Lookout. On June 22, before the district court could act on the motion, Cable Holdings, Cooke, Lookout, and Fort Oglethorpe stipulated that the town would not pass an ordinance allowing Lookout to construct or operate a CATV system within its boundaries until the court made a "final adjudication" of Cable Holdings' lawsuit. The parties also stipulated that Lookout and Cooke would not attempt to obtain a CATV franchise from the town until the "final adjudication" of the lawsuit. This preliminary restraint, entered as an order by the district court, mooted Cable Holdings' motion for a preliminary injunction.
 
 
 6
 On June 24, Cable Holdings moved for a temporary restraining order preventing Lookout and Cooke from attempting to obtain a CATV franchise from Chickamauga or Walker County. After a hearing, the district court denied the motion because Cable Holdings had not demonstrated a sufficient likelihood of success on the merits. Cable Holdings also amended its complaint, seeking a declaration of the validity of its "exclusive" franchises with Chickamauga and Walker County, and moved for a preliminary injunction preventing Lookout and Cooke from attempting to obtain a CATV franchise from Chickamauga or Walker County.
 
 
 7
 On July 20, Lookout, Cooke, and Fort Oglethorpe answered Cable Holdings' complaint. Lookout raised twenty-one defenses and five counterclaims based on tort law, antitrust law, and Sec. 1983. Cooke asserted twenty-three defenses and five counterclaims based on antitrust law, federal securities law, Sec. 1983, and contract law. Fort Oglethorpe's answer contained thirteen defenses and four counterclaims based on tort law, antitrust law, and contract law. On August 29, Cable Holdings moved to dismiss three of Lookout's counterclaims, four of Cooke's counterclaims, and three of Fort Oglethorpe's counterclaims.
 
 
 8
 At a hearing on September 6, Cable Holdings renewed its request for a temporary restraining order preventing Lookout and Cooke from attempting to obtain a CATV franchise from Walker County.[3] The district court denied the request because Cable Holdings had failed to demonstrate the existence of an irreparable injury, and because the public interest would not be served by such an order. On September 27, Cable Holdings made yet a third request for a temporary restraining order preventing Lookout and Cooke from seeking a CATV franchise from Walker County. The district court again denied the motion, this time holding that Cable Holdings had failed to demonstrate either the existence of irreparable injury or a substantial likelihood of success on the merits.
 
 
 9
 On October 5, Lookout and Cooke filed a motion to dissolve the order, entered on the stipulation of the parties, preventing Fort Oglethorpe from issuing a CATV franchise to Lookout and Cooke. The next day, Fort Oglethorpe also moved to dissolve this preliminary restraint, and requested partial summary judgment on the issue of the validity of Cable Holdings' "exclusive" franchise. On October 11, Lookout and Cooke moved for summary judgment on all issues raised by Cable Holdings' complaint.
 
 
 10
 On November 3, 1983, Cable Holdings requested a ruling on its June 24 motion for a preliminary injunction preventing Lookout and Cooke from attempting to obtain a CATV franchise from Walker County. On November 14, Cable Holdings moved to disqualify a law firm that had been representing Lookout and Cooke. On December 8, Cable Holdings moved to dismiss several of Fort Oglethorpe's counterclaims, and to deposit funds into the registry of the district court.[4]
 
 
 11
 On December 9, Cable Holdings moved to stay an action that had been filed by Lookout in the Superior Court of Walker County, Georgia. The superior court action involved (1) whether Lookout had the right to obtain CATV franchises from Fort Oglethorpe, Chickamauga, and Walker County, and (2) whether the three governmental entities had acted ultra vires in granting "exclusive" franchises to Cable Holdings. The district court, relying on the Younger doctrine, declined to stay the superior court action.[5]
 
 
 12
 On February 16, 1984, the district court announced that it would treat Cable Holdings' motion to dismiss as a motion for summary judgment, and asked the parties to submit any materials they wanted the court to consider in ruling on the motion. On February 27, the court added Chickamauga and Walker County as party-defendants. The city and county filed answers on April 2 and April 5, respectively. The county's answer included a counterclaim based on Cable Holdings' alleged failure to pay required franchise fees.
 
 
 13
 On April 30, Lookout and Cooke notified the district court of a declaratory judgment that had been entered in the superior court action. See Lookout Cable Services, Inc. v. Cable Holdings of Battlefield, Inc., Civ. No. 28,866 (Sup.Ct. April 26, 1984). The superior court ruled, inter alia, that Chickamauga, Fort Oglethorpe, and Walker County lacked the authority to grant "exclusive" CATV franchises, stating:
 
 
 14
 Cities and Counties in Georgia have no power or authority to grant an exclusive franchise unless such power or authority is expressly granted by the General Assembly. See, e.g. Macon Ambulance Service, Inc. v. Snow Properties, Inc., 218 Ga. 261[, 127 S.E.2d 598] (1962). This Court cannot locate such an express grant of authority to Chickamauga, Fort Oglethorpe or [Walker] County as of the time of the grant of the franchises at issue. Therefore, the exclusivity features of the 1972 franchises granted to Battlefield by Chickamauga, Fort Oglehorpe [sic] and [Walker] County are ultra vires, void and unenforceable; and the Court so declares.
 
 
 15
 In a footnote accompanying this portion of the order, the superior court added:
 
 
 16
 As of April 9, 1981, the General Assembly authorized counties "... to grant in [their] sole discretion one or more franchise licenses for the operation of Cable-Television Systems within the territorial limits of that county...." O.C.G.A. Sec. 36-18-2. This legislation, patently: is not retroactive; does not apply to municipalities; does not require but only authorizes exclusive franchises; and, in any event, cannot revive by ratification or other theory a contract which was ultra vires and void ab initio, see, e.g. Hor[k]an v. City of Moultrie, 136 Ga. 561[, 71 S.E. 785] (1911).
 
 
 17
 On May 17, 1984, the district court issued the interlocutory order that is the subject of this appeal. In the order, the court (1) granted partial summary judgment in favor of Lookout, Cooke, and Fort Oglethorpe, holding, primarily on the basis of the superior court's declaratory judgment, that the "exclusive" CATV franchises granted to Cable Holdings by Fort Oglethorpe, Chickamauga, and Walker County were invalid, (2) granted summary judgment in favor of Cable Holdings on various abuse of process, tortious interference, Sec. 1983, and securities law counterclaims filed by the defendants,[6] (3) denied Cable Holdings' motion for summary judgment on various antitrust and indemnification counterclaims, (4) granted the motion to dissolve the preliminary restraint preventing Fort Oglethorpe from issuing a CATV franchise to Lookout and Cooke, (5) disqualified one of Lookout's and Cooke's lawyers, (6) denied Cable Holdings' motion for a preliminary injunction preventing Lookout and Cooke from seeking to obtain a CATV franchise from Walker County, and (7) granted the motion to deposit funds into the registry of the court.
 
 
 18
 Cable Holdings filed a timely notice of appeal, and asked the district court to stay its order pending appeal. After a hearing, the district court denied the motion. Cable Holdings then filed an emergency motion in this court, again seeking a stay of the district court's order pending appeal. The motion was denied. See Cable Holdings of Battlefield, Inc. v. Cooke, No. 84-8445 (11th Cir. June 7, 1984) (unpublished order).
 
 II. JURISDICTION
 
 19
 Initially, we must determine whether we have jurisdiction to hear this appeal, and, if so, the scope of our jurisdiction.[7] The order appealed from is not a final order, since numerous claims and counterclaims remain unresolved. See 28 U.S.C. Sec. 1291;[8] Fed.R.Civ.P. 54(b).[9] The district court has not directed the entry of a final judgment pursuant to Rule 54(b), nor has the court certified the order for interlocutory appeal pursuant to 28 U.S.C. Sec. 1292(b).[10] Cable Holdings argues, nevertheless, that this court has jurisdiction to review the district court's order under 28 U.S.C. Sec. 1292(a)(1), which provides in pertinent part:
 
 
 20
 [T]he courts of appeals shall have jurisdiction of appeals from:
 
 
 21
 (1) Interlocutory orders of the district courts of the United States ... granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court....
 
 
 22
 Id. According to Cable Holdings, Sec. 1292(a)(1) provides us with jurisdiction over this appeal because the district court's order both "refused" to grant a preliminary injunction and "dissolved" a preliminary restraint that constituted a form of injunction.
 
 
 23
 The defendants, on the other hand, contend that Carson v. American Brands, Inc., 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981), supports their view that appellate jurisdiction is lacking. In Carson, the Supreme Court stated:
 
 
 24
 For an interlocutory order to be immediately appealable under Sec. 1292(a)(1), however, a litigant must show more than that the order has the practical effect of refusing an injunction. Because Sec. 1292(a)(1) was intended to carve out only a limited exception to the final-judgment rule, we have construed the statute narrowly to ensure that appeal as of right under Sec. 1292(a)(1) will be available only in circumstances where an appeal will further the statutory purpose of "permit[ting] litigants to effectually challenge interlocutory orders of serious, perhaps irreparable, consequence." Baltimore Contractors, Inc. v. Bodinger, [348 U.S. 176,] 181, 75 S.Ct. [249,] 252[, 99 L.Ed.2d 233 (1955) ]. Unless a litigant can show that an interlocutory order of the district court might have a "serious, perhaps irreparable, consequence," and that the order can be "effectually challenged" only by immediate appeal, the general congressional policy against piecemeal review will preclude interlocutory appeal.
 
 
 25
 Id. at 84, 101 S.Ct. at 996-97. According to the defendants, Cable Holdings has failed to demonstrate the necessity for an immediate, interlocutory appeal as required by Carson.
 
 
 26
 We do not read Carson so broadly. By its own terms, Carson applies only to interlocutory orders that have "the practical effect of refusing an injunction." Id. at 84, 101 S.Ct. at 996 (emphasis added).[11] Here, the district court explicitly denied Cable Holdings' motion for a preliminary injunction and dissolved the preliminary restraint. Hence, the interlocutory order in this case fits squarely within the plain language of Sec. 1292(a)(1), and Carson is inapposite. See Donovan v. Robbins, 752 F.2d 1170, 1174 (7th Cir.1984) ("Carson, we conclude, requires that irreparable harm be shown whenever a party wants to appeal ... an interlocutory order that while not explicitly the grant or denial of a preliminary injunction may have consequences ... similar to those of such an order." (emphasis added)); see also 16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice and Procedure Sec. 3924, at 67 (1977 & Supp.1985) ("Application of [Sec. 1292(a)(1) ] is easy with respect to orders that directly grant, or refuse to grant, a preliminary injunction, so long as it is clear that the trial court has in fact completed action on the injunction question. More difficulty is encountered, however, in dealing with orders that have the effect of denying preliminary relief, but are not addressed directly to it....").
 
 
 27
 We thus hold that Sec. 1292(a)(1) provides us with jurisdiction to hear this appeal. The next question is: What is the scope of our jurisdiction? A closely analogous situation was presented in Gould v. Control Laser Corp., 650 F.2d 617 (5th Cir. Unit B 1981).[12] There, the plaintiff filed a three-count complaint seeking, inter alia, preliminary and permanent injunctive relief. The district court granted summary judgment in favor of the defendants on two of the three counts, effectively though not explicitly denying the plaintiff's requested injunctive relief, and the plaintiff appealed. The Fifth Circuit dismissed the appeal in part and affirmed in part.[13] In a footnote, the court discussed the scope of appellate jurisdiction under Sec. 1292(a)(1):
 
 
 28
 If we have jurisdiction of this appeal, another question naturally follows: What do we review--the summary judgments or the denial of injunctive relief? A litigant's right to appeal interlocutory injunctions only goes to the injunction itself, and he cannot force consideration of the merits of the underlying case except as necessary to review the injunction. Allen v. Mississippi Comm'n of Law Enforcement, 424 F.2d 285, 290 (5th Cir.1970). It is true that in reviewing interlocutory injunctions we may look to otherwise nonappealable aspects of the order, Mercury Motor Express, Inc. v. Brinke, 475 F.2d 1086, 1091 (5th Cir.1973); Abercrombie & Fitch Co. v. Hunting World, Inc., 461 F.2d 1040 (2d Cir.1972); Devex Corp. v. Houdaille Industries, Inc., 382 F.2d 17, 19-20 (7th Cir.1967), but we cannot examine the merits of the summary judgments at this time. Rule 54(b) is an adequate vehicle to obtain immediate review of partial summary judgments when necessary, and we should not encourage the practice of appending perfunctory requests for injunctive relief to complaints as a device to secure immediate appeal of all orders.
 
 
 29
 Id. at 621 n. 7.
 
 
 30
 Applying the Gould court's analysis to the instant case, we conclude that Sec. 1292(a)(1) confers upon us jurisdiction to review only those portions of the district court's order dissolving the preliminary restraint and denying the preliminary injunction.[14] As the Gould court stated, however, "in reviewing interlocutory injunctions we may look to otherwise nonappealable aspects of the order." Id.; accord, Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1421 (9th Cir.1984) ("We have power ... to review all issues underlying an injunction."). Here, the grant of partial summary judgment in favor of the three defendants was the basis for both the dissolution of the preliminary restraint and the denial of the preliminary injunction. Consequently, we cannot properly exercise our jurisdiction under Sec. 1292(a)(1) without also reviewing the grant of partial summary judgment. We therefore choose to do so, in the exercise of our pendent jurisdiction. Cf. Sierra On-Line, Inc., 739 F.2d at 1421, 223 USPQ 227 (declining to exercise pendent jurisdiction because "interests of judicial economy" would not be served).[15]
 
 III. THE GRANT OF PARTIAL SUMMARY JUDGMENT
 
 31
 Turning to the merits of the appeal, we consider first the grant of partial summary judgment in favor of Lookout, Cooke, and Fort Oglethorpe. The district court granted partial summary judgment because the Superior Court of Walker County, Georgia, in a parallel action filed by Lookout, had ruled that Cable Holdings' "exclusive" franchises were invalid as a matter of law. The district court, acting pursuant to the Full Faith and Credit Act, 28 U.S.C. Sec. 1738,[16] gave res judicata effect to the superior court's judgment. We hold that this was error.
 
 
 32
 Under the Full Faith and Credit Act, a federal court is required to give res judicata effect to state court judgments only to the extent that the courts of the state in which the judgment was entered would do so. See Migra v. Warren City School District Board of Education, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). In Georgia, the res judicata effect of judgments is defined by O.C.G.A. Sec. 9-12-40, which provides:
 
 
 33
 A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue, or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered, until such judgment shall be reversed or set aside.
 
 
 34
 Id. An important judicial gloss on this statute, however, is that res judicata effect will be given only to final judgments. See Gresham Park Community Organization v. Howell, 652 F.2d 1227, 1241-42 (5th Cir. Unit B 1981);[17] First National Bank of Dublin v. Colonial Fire Underwriters Insurance Co., 160 Ga. 166, 127 S.E. 455 (1925). Furthermore, "[d]icta in a recent Georgia Supreme Court case, Culwell v. Lomas & Nettleton Co., 242 Ga. 242, 248 S.E.2d 641 (1978), indicates that finality for res judicata purposes is measured by the same standard as finality for appealability purposes." Gresham Park, 652 F.2d at 1242 & n. 43.
 
 
 35
 The district court undoubtedly believed the superior court's judgment to be final. Subsequent to the issuance of the district court's interlocutory order, however, the Georgia Court of Appeals dismissed Cable Holdings' appeal from the superior court's judgment, holding that the judgment was not final. See Cable Holdings of Battlefield, Inc. v. Lookout Cable Services, Inc., 173 Ga.App. 355, 326 S.E.2d 552 (1985) ("Under the circumstances of this case, the judgment below was not final and this appeal is premature because various counterclaims and cross claims were still pending in the trial court...."). In light of this intervening decision, we conclude that the district court erroneously interpreted Georgia law when it gave res judicata effect to the superior court's judgment. We therefore vacate the grant of partial summary judgment in favor of Lookout, Cooke, and Fort Oglethorpe.[18]
 
 
 36
 IV. THE DISSOLUTION OF THE PRELIMINARY RESTRAINT
 
 
 37
 The district court dissolved the preliminary restraint preventing Lookout and Cooke from seeking to obtain a CATV franchise from Fort Oglethorpe, which had been entered on the stipulation of the parties involved, on the ground that the preliminary restraint was no longer justified because Cable Holdings' "exclusive" franchises were invalid as a matter of law. We have already vacated the portion of the district court's order holding invalid Cable Holdings' "exclusive" franchises, because that conclusion was premised on an erroneous application of the doctrine of res judicata. Therefore, we must also vacate the dissolution of the preliminary restraint.[19]
 
 V. THE DENIAL OF THE PRELIMINARY INJUNCTION
 
 38
 The final issue before us is the propriety of the district court's denial of Cable Holdings' June 24, 1983 motion for a preliminary injunction. The district court denied this motion for the same reason that it granted the partial summary judgment and dissolved the preliminary restraint, namely, the erroneous belief that the superior court's judgment had res judicata effect and that Cable Holdings' "exclusive" franchises thus were invalid as a matter of law. Our rejection of the district court's reasoning, however, does not mean that Cable Holdings was entitled to the preliminary injunction.
 
 
 39
 On the same day that Cable Holdings filed its motion for a preliminary injunction, the district court denied a request for a temporary restraining order, directed to the same parties and intended to serve the same purpose as the preliminary injunction, because Cable Holdings had failed to demonstrate a substantial likelihood of success on the merits. On September 27, 1983, the district court denied another request for a temporary restraining order, in part because Cable Holdings still had not demonstrated a substantial likelihood of success on the merits. Two weeks later, the court issued an order explaining its September 27 ruling in greater detail, and extensively discussing the merits of the case. All of this preceded the superior court's April, 1984 judgment.
 
 
 40
 As is the case with a temporary restraining order, a party seeking a preliminary injunction must show a substantial likelihood of success on the merits. See Harris v. Wilters, 596 F.2d 678, 680 (5th Cir.1979). It is apparent, therefore, that the district court ultimately would have denied Cable Holdings' June 24, 1983 motion for a preliminary injunction even absent the erroneous reliance on the superior court's judgment. Consequently, although the district court denied the motion for the wrong reason, we cannot say that the denial constituted an abuse of discretion. See id. ("Only in rare instances is the issuance of a mandatory preliminary injunction proper.... The denial of such a remedy will not be reversed on appeal except for an abuse of discretion."). Instead, we affirm the denial on the alternative ground that Cable Holdings had not demonstrated a substantial likelihood of success on the merits. See Dandridge v. Williams, 397 U.S. 471, 475 n. 6, 90 S.Ct. 1153, 1156 n. 6, 25 L.Ed.2d 491 (1970) ("The prevailing party may, of course, assert in a reviewing court any ground in support of his judgment, whether or not that ground was relied upon or even considered by the trial court.").[20]
 
 VI. CONCLUSION
 
 41
 On the basis of the foregoing discussion, we hereby VACATE the grant of partial summary judgment in favor of Lookout, Cooke, and Fort Oglethorpe, and the dissolution of the preliminary restraint, but we AFFIRM the denial of Cable Holdings' motion for a preliminary injunction. The case is REMANDED for further proceedings consistent with this opinion.[21]
 
 
 
 [1]
 As explained in plaintiff's brief on appeal, a community antenna television (CATV) system receives distant television signals at a "head end" and transmits the signals to subscribers over coaxial cable. The "head end" usually consists of an antenna and/or an earth station which receives signals communicated via satellite. The coaxial cable generally is constructed in a grid pattern, either strung on telephone poles or laid under roadways
 
 
 [2]
 The parties dispute whether the proposed ordinance was read and approved once or twice by the mayor and council members. In any event, three readings are required for an ordinance to be validly adopted by the town
 
 
 [3]
 The September 6, 1983 request did not include the city of Chickamauga, apparently because the city had denied Lookout's application for a CATV franchise in mid-July
 
 
 [4]
 The funds consisted of the franchise fees allegedly due Fort Oglethorpe under the terms of the "exclusive" franchise agreement
 
 
 [5]
 The district court ruled that the superior court action was not brought primarily for harassment purposes, that the federal antitrust laws do not create an express exception to the Anti-Injunction Act, 28 U.S.C. Sec. 2283, and that abstention from issuing an injunction was the proper course of action under the Younger doctrine. The propriety of this ruling is not before us on this appeal
 
 
 [6]
 The summary judgment on the securities law counterclaim was conditioned upon Cooke's failure to file a brief addressing the issue within 20 days of the date of the interlocutory order
 
 
 [7]
 The parties did not address these issues in their original briefs. Instead, this court raised the jurisdictional issue sua sponte and requested supplemental briefs from all parties. See Roberts v. St. Regis Paper Co., 653 F.2d 166, 169 n. 3 (5th Cir. Unit B 1981)
 
 
 [8]
 28 U.S.C. Sec. 1291 provides, in pertinent part:
 The courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States....
 
 
 [9]
 Rule 54(b) provides:
 When more than one claim for relief is presented in an action, whether as a claim [or] counterclaim, ... the court may direct the entry of a final judgment as to one or more but fewer than all of the claims ... only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims ... shall not terminate the action as to any of the claims ... and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims....
 
 
 [10]
 28 U.S.C. Sec. 1292(b) provides, in pertinent part:
 When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order....
 
 
 [11]
 Carson itself involved such an order. There, the district court refused to enter a consent decree containing a provision effectively constituting a permanent injunction. The district court did not, however, explicitly refuse to grant injunctive relief. See id. 450 U.S. at 83-84, 101 S.Ct. at 996 ("Although the District Court's order declining to enter the proposed consent decree did not in terms 'refus[e]' an 'injunctio[n],' it nonetheless had the practical effect of doing so.")
 Similar orders were involved in the two prior Supreme Court cases extensively discussed in Carson. See Gardner v. Westinghouse Broadcasting Co., 437 U.S. 478, 98 S.Ct. 2451, 57 L.Ed.2d 364 (1978) (denial of class certification effectively, though not explicitly, limited breadth of injunctive relief); Switzerland Cheese Assn., Inc. v. E. Horne's Market, Inc., 385 U.S. 23, 87 S.Ct. 193, 17 L.Ed.2d 23 (1966) (denial of motion for summary judgment effectively, though not explicitly, denied request for permanent injunction).
 
 
 [12]
 The Gould decision was rendered on July 13, 1981. The Eleventh Circuit, in the en banc decision Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981
 
 
 [13]
 Because the interlocutory order in Gould did not explicitly deny injunctive relief, the court applied the Carson rule discussed above. The court noted that the plaintiff "never even attempted to show that the district court's orders will have irreparable consequences." Gould, 650 F.2d at 621. This was the apparent basis for the partial dismissal of the appeal. At the same time, the court held that the plaintiff was not entitled to the requested injunctive relief, and affirmed the order "to the extent that [it] is appealable." Id
 
 
 [14]
 Cable Holdings does not seek to appeal the effective denial of the request for a permanent injunction contained in its complaint. We therefore need not address whether that effective denial would be appealable under Carson
 
 
 [15]
 We emphasize, however, that we review the grant of partial summary judgment not because Cable Holdings is entitled to such review as a matter of right, but because the interests of judicial economy are best served by such immediate review under the peculiar circumstances of this case. As the Gould court noted, the proper method for securing immediate review of a grant of partial summary judgment is through the vehicle of Rule 54(b). See id. at 621 n. 7. Alternatively, Cable Holdings could have sought certification of the court's order for interlocutory appeal pursuant to 28 U.S.C. Sec. 1292(b). See supra note 10
 
 
 [16]
 28 U.S.C. Sec. 1738 provides, in pertinent part:
 [J]udicial proceedings ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.
 
 
 [17]
 The Gresham Park decision was rendered on August 10, 1981. See supra note 12
 
 
 [18]
 In doing so, we express no opinion on the validity of Cable Holdings' "exclusive" franchises, nor do we conclude that Lookout, Cooke, and Fort Oglethorpe are not entitled to partial summary judgment. We simply hold that the district court granted partial summary judgment for the wrong reason
 The defendants argue that the district court did not rely solely on the res judicata effect of the superior court judgment when it entered partial summary judgment in their favor. This argument is based on the following statement in the district court's order: "If the Lookout decision were not binding on this Court, it would reach the same conclusion, based on the case of Blue Ridge Telephone Co. v. City of Blue Ridge, 161 Ga.App. 452[, 288 S.E.2d 705] (1982)."
 Closer examination of the order reveals, however, that the quoted statement refers only to the issue of whether the three governmental entities ratified Cable Holdings' "exclusive" franchises after April 9, 1981, the effective date of O.C.G.A. Sec. 36-18-2, by demanding and receiving franchise fees. The district court relied solely on res judicata in resolving the larger issues relevant to the grant of partial summary judgment, namely, (1) whether the governmental entities acted ultra vires in granting the "exclusive" franchises, (2) whether O.C.G.A. Sec. 36-18-2 confers upon counties the power to grant "exclusive" CATV franchises, and (3) whether O.C.G.A. Sec. 36-18-2 applies retroactively.
 
 
 [19]
 The defendants argue that, even if the district court's rationale was erroneous, the dissolution of the preliminary restraint nevertheless was proper. We disagree. In particular, we find that the defendants failed to establish the existence of a "grievous wrong evoked by new or unforeseen conditions." See United States v. Swift & Co., 286 U.S. 106, 119, 52 S.Ct. 460, 464, 76 L.Ed. 999 (1932) (standard for altering consent decrees)
 
 
 [20]
 In addition, we note that the denial of the September 27, 1983 request for a temporary restraining order was also based in part on Cable Holdings' failure to demonstrate the existence of an irreparable injury. Our review of the record indicates that conditions had not changed substantially by May 17, 1984, the date on which the district court denied the motion for a preliminary injunction. In fact, the evidence of irreparable injury cited by Cable Holdings in support of its preliminary injunction motion was strikingly similar to the evidence rejected by the district court in connection with the September 27, 1983 request for a temporary restraining order. Therefore, we could also affirm the denial of the preliminary injunction motion on the alternative ground that Cable Holdings still had not demonstrated the existence of an irreparable injury. See Harris v. Wilters, 596 F.2d at 680
 
 
 [21]
 On April 25, 1985, after this opinion was written but before it was filed, the Superior Court of Walker County, Georgia, issued an order expressly directing the entry of declaratory judgment in favor of Lookout pursuant to O.C.G.A. Sec. 9-11-54(b), the Georgia counterpart to Federal Rule of Civil Procedure 54(b). The superior court's order stated, in part:
 ... Cities and Counties in Georgia have no power or authority to grant an exclusive franchise unless such power or authority is expressly granted by the General Assembly. See e.g. Macon Ambulance Service, Inc., vs. Snow Properties, Inc., 218 Ga. 262[, 127 S.E.2d 598] (1962).
 This Court cannot locate such an express grant of authority to CHICKAMAUGA, FORT OGLETHORPE, or the COUNTY as of the time of the grant of the franchises at issue. Therefore, the exclusivity features of the 1972 franchises granted to Battlefield by CHICKAMAUGA, FORT OGLETHORPE, and the COUNTY are ultra vires, void and unenforceable; and the Court so declares.
 IT IS FURTHER ORDERED, ADJUDGED and DECREED that this Court so finds that there is no just reason for delay and the Court hereby expressly directs the Clerk to enter this Judgment pursuant to the terms of O.C.G.A. Sec. 9-11-54(b).
 Lookout Cable Services, Inc. v. Cable Holdings of Battlefield, Inc., Civ. No. 28,866 (Sup.Ct. April 25, 1985) (emphasis in original). In a footnote, the superior court also rejected the argument that O.C.G.A. Sec. 36-18-2 retroactively validated Cable Holdings' "exclusive" franchises.
 This order appears to resolve the finality problem that led the Georgia Court of Appeals to dismiss Cable Holdings' appeal from the superior court's original declaratory judgment. See supra page 5048. The parties disagree, however, on whether under Georgia law a judgment may be considered final for res judicata purposes before the conclusion of the appellate process, or, alternatively, before the expiration of the time within which an appeal may be filed. It would be imprudent for us to attempt to resolve this issue here, since any conclusion we might reach would be subject to change based on the course of a possible appeal from the superior court's newly entered judgment. We therefore leave for the district court, on remand, the issue of the possible res judicata effect of this newly entered judgment.