881 F.2d 983
 12 U.S.P.Q.2d 1044
 SHOWTIME/THE MOVIE CHANNEL, INC., Southeastern Cable
Corporation, Sunbelt-Denntronics Cable, Ltd., Sunbelt Cable,
Ltd., Sunbelt Cable Corporation and ESPN, Inc., Plaintiffs,
Counterclaim Defendants-Appellees,
v.
COVERED BRIDGE CONDOMINIUM ASSOCIATION, INC., Defendant,
Counterclaim Plaintiff-Third-Party Plaintiff-Appellant,
Harold Berger, Herbert Gross, Jack Tager, Bertha Goodman,
Seymour Paris, Louis Lax and Frank Steinberger,
Defendants-Appellants,
Dennis Chambers, etc., et al., Third-Party Defendants.
 No. 88-5422.
 United States Court of Appeals,
Eleventh Circuit.
 Aug. 24, 1989.
 
 Spencer M. Sax, Sachs & Sax, P.A., Peter S. Sachs, Boca Raton, Fla., for defendants-appellants.
 Terry Bienstock, Frates Bienstock and Sheehe, Miami, Fla., Allan H. Hoffman, West Palm Beach, Fla., for plaintiffs counterclaim defendants-appellees.
 Appeal from the United States District Court for the Southern District of Florida.
 Before CLARK and COX, Circuit Judges, and HENDERSON, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 This is an appeal from an order of the United States District Court for the Southern District of Florida granting final summary judgment and a permanent injunction in favor of the plaintiffs-appellees, a cable program distributor and various program suppliers. 693 F.Supp. 1080. In December, 1985, Showtime/The Movie Channels, Inc. ("Showtime"); Entertainment and Sports Programming Network, Inc. ("ESPN"); Southeastern Cable Corp.; Sunbelt Cable Corp. ("Sunbelt"); and its affiliates sued the defendant-appellant, Covered Bridge Condominium Association ("Covered Bridge"), alleging violations of the Federal Communications Act of 1934, 47 U.S.C. Sec. 705,[1] and the Lanham Act for trademark infringement, 15 U.S.C. Sec. 1114, and unfair competition, 15 U.S.C. Sec. 1125. The appellees later amended their complaint to add individual board members of Covered Bridge as defendants. The suit also included a number of pendent state causes of action alleging violations of Florida statutory and common law. The counts of the complaint sought both damages and injunctive relief. The underlying dispute stems from the condominium association members' unauthorized viewing of certain satellite transmissions, including those of Showtime and ESPN, through the use of an earth satellite dish owned in common by the individual condominium unit owners. In October, 1986, Covered Bridge filed a counterclaim and third party complaint, asserting violations of the Sherman Act and state law for unfair trade practices and conversion of property.
 
 
 2
 In September, 1986, the plaintiffs filed a motion for summary judgment on liability and sought a permanent injunction. After a hearing on the motion in March, 1988, the district court entered a final summary judgment on liability as to all of the plaintiffs' federal causes of action.[2] In conjunction with the grant of the final summary judgment, the court simultaneously entered a permanent injunction against the defendants, restraining them from further use of their equipment to intercept any satellite transmissions which Sunbelt or any other cable television company might otherwise provide. On appeal, Covered Bridge urges this court to reverse the permanent injunction as well as the grant of summary judgment. We affirm the entry of the permanent injunction, affirm in part the grant of summary judgment, and dismiss the remainder of the appeal for lack of jurisdiction.
 
 
 3
 As a preliminary matter, we first address the appellants' challenge to Sunbelt's standing to sue as a "person aggrieved" by the unauthorized viewing under Sec. 705 of the 1984 Cable Act.[3] Covered Bridge contends that Sunbelt, because it is not the sender or originator of any cable communication, but merely a nonexclusive licensee with collateral rights of distribution, lacks standing to contest the appellants' use of their satellite dish to intercept Showtime's and ESPN's signals. Courts generally have resolved this question in favor of the cable systems operator, relying on traditional standing analyses and examination of the statute's legislative history. See, e.g., Sioux Falls Cable Television v. South Dakota, 838 F.2d 249, 251-52 (8th Cir.1988); Quincy Cablesystems, Inc. v. Sully's Bar, Inc., 650 F.Supp. 838, 840-44 (D.Mass.1986); American Television and Communications Corp. v. Floken, Ltd., 629 F.Supp. 1462, 1469-72 (M.D.Fla.1986); but see Air Capital Cablevision, Inc. v. Starlink Communications Group, Inc., 601 F.Supp. 1568, 1572 (D.Kan.1985) (holding that cable television company lacked standing to seek injunction requiring distributor of earth satellite dish antennae to advise customers regarding authorized and unauthorized use of station equipment). The issue is now foreclosed, however, by a recent amendment to Sec. 705, which defines "any person aggrieved" as including "any person with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming...." 47 U.S.C. Sec. 605(d)(6) (Supp.1989) (emphasis supplied). Thus, the statute as it presently exists clearly establishes a cable program distributor's standing to sue for alleged violations of Sec. 605(a).
 
 
 4
 We next confront the jurisdictional posture of this case. The parties correctly assert our jurisdiction to review the district court's grant of a permanent injunction under 28 U.S.C. Sec. 1292(a)(1),[4] which provides in pertinent part:
 
 
 5
 The courts of appeals shall have jurisdiction of appeals from:
 
 
 6
 (1) Interlocutory orders of the district courts of the United States ..., granting, continuing, modifying, refusing, or dissolving injunctions, or refusing to dissolve or modify injunctions, except where direct review may be had in the Supreme Court.
 
 
 7
 Section 1292(a) confers appellate jurisdiction over an appeal from the district court's interlocutory order granting permanent injunctive relief, even though the district court's final judgment fails to dispose of all claims for relief, Alamo Rent-A-Car, Inc. v. Sarasota-Manatee Airport Authority, 825 F.2d 367, 369 (11th Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 1022, 98 L.Ed.2d 987 (1988); Schulner v. Jack Eckerd Corp., 706 F.2d 1113, 1114 (11th Cir.1983); Kerwit Medical Products, Inc. v. N. & H. Instruments, Inc., 616 F.2d 833, 836 (5th Cir.1980),[5] and despite the lack of a Fed.R.Civ.P. 54(b) certification, the usual means of securing immediate appellate review.[6] Simmons v. Block, 782 F.2d 1545, 1549 (11th Cir.1986); Gray Line Motor Tours, Inc. v. City of New Orleans, 498 F.2d 293, 295 n. 1 (5th Cir.1974).
 
 
 8
 The extent of our jurisdiction, however, is not immediately clear. The district court issued a permanent injunction based upon its grant of summary judgment, an appropriate result where the record is sufficiently developed. Securities and Exchange Comm'n v. Spence & Green Chemical Co., 612 F.2d 896, 903 (5th Cir.1980), cert. denied, 449 U.S. 1082, 101 S.Ct. 866, 66 L.Ed.2d 806 (1981); accord Securities & Exchange Comm'n v. Murphy, 626 F.2d 633, 655 (9th Cir.1980). On appeal, Covered Bridge contends that the district court improperly granted the injunction because genuine issues of material fact remain for resolution, precluding the grant of summary judgment which formed the basis for the permanent injunction. A question arises, then, as to whether we are to review the imposition of final summary judgment in tandem with the grant of injunctive relief. An analogous situation occurred in Gould v. Control Laser Corp., 650 F.2d 617 (5th Cir. Unit B 1981). There, the plaintiff appealed from the district court's grant of partial summary judgment in favor of the defendants which, the court held, effectively denied the plaintiff's request for injunctive relief.[7] The court, in discussing the scope of appellate jurisdiction within the context of Sec. 1292(a)(1), commented in a footnote:
 
 
 9
 If we have jurisdiction of this appeal, another question naturally follows: What do we review--the summary judgments or the denial of injunctive relief? A litigant's right to appeal interlocutory injunctions goes only to the injunction itself, and he cannot force consideration of the merits of the underlying case except as is necessary to review the injunction. Allen v. Mississippi Commission of Law Enforcement, 424 F.2d 285, 290 (5th Cir.1970). It is true that in reviewing interlocutory injunctions we may look to otherwise nonappealable aspects of the order, Mercury Motor Express, Inc. v. Brinke, 475 F.2d 1086, 1091 (5th Cir.1973); Abercrombie & Fitch Co. v. Hunting World, Inc., 461 F.2d 1040 (2d Cir.1972); Devex Corp. v. Houdaille Industries, Inc., 382 F.2d 17, 19-20 (7th Cir.1967), but we cannot examine the merits of the summary judgments at this time. Rule 54(b) is an adequate vehicle to obtain immediate review of partial summary judgments when necessary, and we should not encourage the practice of appending perfunctory requests for injunctive relief to complaints as a device to secure immediate appeal of all orders.
 
 
 10
 650 F.2d at 621 n. 7.
 
 
 11
 Consideration of "otherwise nonappealable aspects of the order" is a matter within the discretion of the court of appeals. Although "[a]ppellate review under Sec. 1292(a)(1) is ordinarily confined to the injunctive aspects of the district court's order ... such confinement is a rule of judicial administration, not of jurisdiction. An appellate court has power to review the case to the extent it chooses to exercise it." Western Elec. Co. v. Milgo Electronic Corp., 568 F.2d 1203, 1208 (5th Cir.1978) (citations omitted); accord Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1421 (9th Cir.1984) (court of appeals has "power ... to review all issues underlying an injunction"). Although it would be possible to exercise our pendent jurisdiction to review, in addition to the permanent injunction, the grant of summary judgment in its entirety, we decline the opportunity.[8] Under certain circumstances, immediate review of the summary judgment may be justified in "the interests of judicial economy." Cable Holdings of Battlefield, Inc. v. Cooke, 764 F.2d 1466, 1472 n.15 (11th Cir.1985). Here, review of all of the issues underlying the grant of summary judgment "would call for conclusive resolution of the merits." Sierra On-Line, Inc., supra, 739 F.2d at 1429 (declining to exercise pendent jurisdiction over district court's denial of partial summary judgment). To assess the propriety of the permanent injunction, however, we need only address one issue going to the merits of the summary judgment i.e., whether the defendants met the requirements for statutory exemption from liability under the Federal Communications Act. Because we agree with the district court that Covered Bridge failed to establish at least one of the statutory criteria for exemption, we hold that the court properly granted summary judgment for the Federal Communications Act violation and therefore the permanent injunction was warranted. However, because the appropriateness of injunctive relief does not turn upon a finding of liability as to all of the plaintiffs' federal claims, we expressly decline to exercise our jurisdiction to review the district court's grant of summary judgment on the plaintiff's trademark infringement and unfair competition counts.
 
 
 12
 Section 605(a) of the Federal Communications Act prohibits the unauthorized third party reception of satellite transmissions intended for fee-paying subscribers.[9] See Home Box Office, Inc. v. Corinth Motel, Inc., 647 F.Supp. 1186 (N.D.Miss.1986); American Television and Communications Corp. v. Floken, Ltd., supra; Entertainment and Sports Programming Network, Inc. v. Edinburg Community Hotel, Inc., 623 F.Supp. 647 (S.D.Tex.1985); National Football League and Miami Dolphins, Inc. v. The Alley, Inc., 624 F.Supp. 6 (S.D.Fla.1983). Section 605(e)(3)(B)(i) (Supp.1989) empowers the district court to "grant ... final injunctions on such terms as it may deem reasonable to prevent or restrain violations of subsection (a)." On appeal from a permanent injunction granted on a motion for summary judgment, the critical issue is "whether [the plaintiff], as the moving party here, clearly established the absence of any genuine issue of fact material to the granting of the injunction." Securities and Exchange Comm'n v. Murphy, supra, 626 F.2d at 655; see 6 Moore's Federal Practice para. 56.17 (1988).
 
 
 13
 The appellants do not deny that they intercepted, without authorization, the plaintiffs' satellite programming. Covered Bridge maintains, however, that they are statutorily exempt from the proscriptions of Sec. 605(a) because of the exemption contained in Sec. 605(b), which provides:
 
 
 14
 The provisions of subsection (a) of this section shall not apply to the interception or receipt by any individual, or the assisting ... of such interception or receipt, of any satellite cable programming for private viewing if--
 
 
 15
 (1) the programming is not encrypted; and
 
 
 16
 (2)(A) a marketing system is not established under which--
 
 
 17
 (i) an agent or agents have been lawfully designated for the purpose of authorizing private viewing by individuals, and
 
 
 18
 (ii) such authorization is available to the individual involved from the appropriate agent or agents; or
 
 
 19
 (B) a marketing system described in subparagraph (A) is established and the individuals receiving such programming has [sic] obtained authorization for private viewing under that system.
 
 
 20
 Thus, the exemption contained in Sec. 605(b) imposes three requirements: (1) a private viewing; (2) unencrypted programming; and (3) no established marketing system or, in the alternative, the claimant has obtained the appropriate authorization if a marketing system has been established. The district court held that the appellants did not fall within the Sec. 605(b) exception. In so concluding, the court reasoned that the condominium association's interception of the satellite transmissions through the use of a single satellite dish did not fulfill the Sec. 605(b) requirement that the programming be viewed only in the individual's private dwelling unit. Alternatively, the court held that even if the defendant's reception of the signals could be considered a private viewing, that Covered Bridge also had failed to meet the statutory criteria for exemption under Sec. 605(b)(1), that the programming be encrypted,[10] and Sec. 605(b)(2)(A), that no established marketing system for the signals be available. Because our review of the record indicates that a marketing system was in place, and that the defendants lacked proper authorization, we need not reach the issues of whether Covered Bridge's reception of the satellite programming was within the definition of "private viewing" or whether the programming was encrypted.
 
 
 21
 Congress' intent in creating a statutory exception to Sec. 605(a) liability was to provide a means for individuals or single family homeowners to intercept satellite programming in rural areas where there is no available market to supply such programming. See 130 Cong.Rec. 14287 (daily ed. Oct. 11, 1984). A condominium association, although composed of individuals, does not fall within this protected category. Covered Bridge was operating a classic "satellite master antenna television," or SMATV, system, which Congress has defined as "a private cable system serv[ing] only residential apartment, cooperative, condominium or other multiple dwelling unit complexes." Senate Comm. on Commerce, Science and Transportation on S66, S.Rep. No. 98-67, 98th Cong., 1st Sess., at 19 (1983).
 
 
 22
 Although appellees acknowledged that they had not established a marketing system in Covered Bridge's locality for an individual to gain authorization for utilization of his own backyard satellite earth station, they did have such a mechanism in place for SMATV systems servicing multiple unit dwellings, including condominium complexes such as Covered Bridge. In fact, the record indicates that the defendants, prior to installation of the commonly-owned satellite dish, contracted with Denntronics, a predecessor in interest to appellee Sunbelt, to receive cable programming. In addition, some individual members of the condominium association contracted personally with Denntronics to receive additional channels.[11] The record reflects that Showtime agents, upon learning of Covered Bridge's unauthorized viewing of Showtime's cable programming, offered to provide its services to the condominium complex for a fee. Covered Bridge's rejection of the offer and its refusal to cease and desist in its conduct gave rise to this suit. The defendants cannot legitimately claim that an available mechanism for distribution of cable programming in their locale did not exist. We therefore hold that the district court correctly granted the appellees' motion for summary judgment on the Federal Communications Act claim where there was no genuine issue of fact as to the existence of a marketing system.
 
 
 23
 Accordingly, we AFFIRM the district court's entry of the permanent injunction. We AFFIRM in part the grant of final summary judgment and DISMISS the remainder of the appeal.
 
 
 
 [1]
 Section 705 formerly appeared as Sec. 605 of the Act. The Comprehensive Cable Telecommunications Act of 1984, P.L. No. 98-549, 98 Stat. 2802 (1984 Cable Act) substantially amends and redesignates Sec. 605 of the Federal Communications Act of 1934 as Sec. 705. The amendments are codified at 47 U.S.C. Sec. 605
 
 
 [2]
 Having ruled on the federal claims, the district court did not reach the pendent state law issues. The court also dismissed Covered Bridge's counterclaim and third party complaint
 
 
 [3]
 47 U.S.C. Sec. 605(e)(3)(A) (Supp.1989) provides: "Any person aggrieved by any violation of [Sec. 605(a) ] may bring a civil action in a United States district court or a court of competent jurisdiction."
 
 
 [4]
 The final judgment rule precludes appeal of this order under 28 U.S.C. Sec. 1291. A grant of summary judgment limited to the issue of liability is interlocutory in nature and therefore not considered "final" for Sec. 1291 purposes where assessment of damages or awarding of other relief awaits resolution, as is the case here. Liberty Mutual Ins. Co. v. Wetzel, 424 U.S. 737, 744, 96 S.Ct. 1202, 1206-07, 47 L.Ed.2d 435, 441-42 (1976); McGill v. Parsons, 532 F.2d 484, 485 n. 1 (5th Cir.1976). See also United States v. Taylor, 632 F.2d 530, 531 (5th Cir.1980) (order dismissing counterclaims is interlocutory rather than final, and therefore not immediately appealable under Sec. 1291)
 
 
 [5]
 The Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981 in Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc)
 
 
 [6]
 Fed.R.Civ.P. 54(b) provides:
 Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.
 
 
 [7]
 In Gould, the court was faced with the issue of whether the order granting summary judgment was equivalent to an order refusing an injunction for purposes of appealability under Sec. 1292(a)(1). Here, however, we need not make such a determination since the district court explicitly granted injunctive relief, bringing the appeal within the purview of the statute
 
 
 [8]
 Cf. Cable Holdings of Battlefield, Inc. v. Cooke, 764 F.2d 1466 (11th Cir.1985), in which this court reached a contrary result: "Here, the grant of partial summary judgment ... was the basis for ... the denial of the preliminary injunction. Consequently, we cannot properly exercise our jurisdiction under Sec. 1292(a)(1) without also reviewing the grant of partial summary judgment. We therefore choose to do so, in the exercise of our pendent jurisdiction." Id. at 1472
 
 
 [9]
 Sec. 605(a) provides in pertinent part:
 No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.
 
 
 [10]
 The court noted that appellee Showtime's signals had been encrypted following filing of suit and therefore that the Sec. 605(b) exemption was inapplicable to the interception of its signals
 
 
 [11]
 We reject the defendants' argument that the mere existence of a cable company willing to provide services for a fee is insufficient to show the availability of a marketing system for cable programming. Defendants rely upon the Eighth Circuit Court of Appeals' discussion in Sioux Falls, supra, in which the court quoted the district court's holding that "the marketing system must be established by the programmers themselves, not by the distributors." 838 F.2d at 253. The Eighth Circuit, however, did not agree with the district court's conclusion, although it found that a marketing system had not been established for other reasons. In any event, the Sioux Falls district court relied for its holding upon its interpretation of Sec. 605(b)(2) as requiring that the marketing system be established by "those that have the proprietary interest in that which is being intercepted or received." Id. The new definition of "any person aggrieved" makes clear that a wholesale or retail distributor of satellite cable programming does have proprietary rights in the intercepted communication. 47 U.S.C.A. Sec. 605(d)(6) (Supp.1989)