Dan A. MORGENSTERN, M.D., Plaintiff–Appellee,

v.

Charles S. WILSON, M.D.; Deepak Gangahar, M.D.; Herbert E. Reese, M.D.; Walt F. Weaver, M.D.; Christopher C. Caudill, M.D.; Joseph R. Gard, M.D.; Sabyasachi Mahapatra, M.D.; Robert J. Buchman, M.D.; Michael A. Breiner, M.D.; Alan D. Forker, M.D.; Stephen W. Carveth, M.D., Defendants–Appellants.

Cardiovascular & Thoracic Surgery, P.C.; Cardiology Consultants, P.C., Defendants.

Nebraska Heart Institute, P.C., Defendant–Appellant.

No. 93–2446.

United States Court of Appeals, Eighth Circuit.

Submitted March 14, 1994.

Decided July 20, 1994.

Joe Sims, Washington, DC, argued (Kathryn M. Fenton and James D. Wareham, on the brief), for appellant.

Daniel Klaus, Lincoln, NE, argued, for appellee.

Before McMILLIAN and WOLLMAN, Circuit Judges, and VIETOR,* District Judge.

McMILLIAN, Circuit Judge.

Charles S. Wilson, M.D., and others, (hereinafter referred to as defendants), appeal from an interlocutory order entered in the United States District Court for the District of Nebraska compelling either the dissolution or the restructuring of the Nebraska Heart Institute (NHI). *Morgenstern v. Wilson,* Civ. No. 90–L–34 (D.Neb. Apr. 26, 1993). For reversal, defendants argue the district court erred in granting an injunction because (1) several legal theories of anti-competitive conduct that were presented to the jury were erroneous as a matter of law, and (2) there was insufficient evidence to support the jury's verdict that Wilson, along with the associated cardiac surgeons, thoracic and vascular surgeons, and cardiologists who comprised NHI, violated § 2 of the Sherman Antitrust Act, 15 U.S.C. § 2. Appellee Dan A. Morgenstern, M.D., filed a motion to dismiss the appeal for lack of appellate jurisdiction. For the reasons discussed below, we reverse the judgment of the district court.

## I.

In 1987, NHI, a professional corporation, was formed in Lincoln, Nebraska, to provide administrative, clinical and marketing services to its members. The members of NHI were Cardiology Consultants, P.C. (CCPC), a group cardiology practice consisting of six cardiologists, and Cardiovascular & Thoracic Surgery, P.C. (CVTS), a cardiac surgical group practice comprised of three cardiac surgeons and two thoracic and vascular surgeons. The cardiologists of CCPC referred their patients in need of open-heart surgery, angioplasty, and other cardiac surgical procedures to the surgeons of CVTS.

In July 1987 CVTS employed Morgenstern as a cardiac surgeon. After practicing one year with CVTS, CVTS informed Morgenstern that he would not be made a partner with the group. However, at Morgenstern's request, his employment contract with CVTS was extended for a second year during which he continued to perform cardiac surgical procedures on patients referred to CVTS by CCPC. While associated with NHI as a member of CVTS, Morgenstern performed approximately 180 cardiac surgeries.

Upon leaving CVTS in 1989, Morgenstern opened his own cardiac surgery practice in Lincoln. Although the thoracic and vascular aspects of Morgenstern's practice thrived, Morgenstern's cardiac surgery practice failed. During the nine months he practiced cardiac surgery after leaving CVTS, he per-

---

* The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa, sitting by designation.

formed only six surgeries. None of the six patients was referred to Morgenstern by CCPC.

Morgenstern filed suit in federal district court against NHI, CCPC, CVTS, and the individual cardiologists and surgeons affiliated with those groups, alleging numerous violations of the Sherman Antitrust Act. After abandoning his conspiracy to monopolize claim under § 1 of the Sherman Antitrust Act, and attempted monopolization and conspiracy to monopolize claims under § 2 of the Sherman Antitrust Act, Morgenstern proceeded to trial solely on a claim of actual monopolization of cardiac surgery pursuant to § 2. The jury failed to reach a verdict, and the district court ordered a new trial on the actual monopolization claim. The district court denied defendants' motion for judgment as a matter of law.

Following the second trial, the jury exonerated CCPC and CVTS of liability, but found the individual physicians and NHI liable for monopolizing the "adult cardiac surgery market." The jury found that Morgenstern had suffered $1,467,000 in damages as a result of the formation of NHI and the failure of the cardiologists to refer patients to Morgenstern, or their referral of patients only to the surgeons associated with NHI. The district court, denying defendants' renewed motion for judgment as a matter of law, upheld the jury's verdict on a theory of "monopolization by combination of individuals and corporations, acting in concert." However, the district court found insufficient evidence to support the jury's award of damages and granted a new trial on that issue. The district court, implementing the jury's verdict on liability, granted injunctive relief to Morgenstern pursuant to § 16 of the Clayton Act, 15 U.S.C. § 26, and ordered defendants to dissolve or restructure NHI to eliminate common ownership by cardiologists and surgeons and to prevent joint marketing on behalf of CCPC and CVTS. This appeal by defendants followed. Morgenstern filed a motion to dismiss the appeal for lack of appellate jurisdiction.

## II.

We consider first our appellate jurisdiction. Morgenstern argues that the injunction in question, implementing the jury's verdict, is not an appealable interlocutory decision within the provisions of 28 U.S.C. § 1292(a)(1). We disagree.

Section 1292(a) provides, in pertinent part, that "the courts of appeal shall have jurisdiction of appeals from: (1) [i]nterlocutory orders of the district courts ... granting, continuing, modifying, refusing or dissolving injunctions." Thus, by the plain language of § 1292(a), interlocutory orders granting "injunctions" are appealable. Nevertheless, Morgenstern argues that, under *Carson v. American Brands, Inc.,* 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981) (*Carson*), unless a litigant is able to show that an interlocutory order of the district court (1) will have serious, perhaps irreparable, consequences, and (2) the order can be effectually challenged only by immediate appeal, the general congressional policy against piecemeal review will preclude interlocutory appeal. Morgenstern contends that, because the order at issue in the present case does not require defendants to take any action until sixty days "following completion of the appellate process," it fails both prongs of the *Carson* test.

We believe Morgenstern misunderstands the law developed on § 1292(a) appeals. Section 1292(a) invokes two separate avenues of analysis. The United States Supreme Court has stated that § 1292(a)(1) provides appellate jurisdiction for "orders that grant or deny injunctions" as well as those "orders that merely have the practical effect of granting or denying injunctions and have 'serious, perhaps irreparable, consequence.'" *Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 287–88, 108 S.Ct. 1133, 1143, 99 L.Ed.2d 296 (1988), quoting *Carson,* 450 U.S. at 84, 101 S.Ct. at 996–97. Thus, the first question that must be addressed "is whether the order appealed from specifically [granted or] denied an injunction or merely had the practical effect of doing so." *Kausler v. Campey,* 989 F.2d 296, 298 (8th Cir.1993) (*Kausler*). We are in accord with the majority of circuits which have held that, if an interlocutory order expressly grants or denies a request for injunc-

tive relief, the *Carson* requirements need not be met and the order is immediately appealable as of right under § 1292(a)(1). *See, e.g., MAI Basic Four, Inc. v. Basic, Inc.*, 962 F.2d 978, 982 (10th Cir.1992); *Sherri A.D. v. Kirby*, 975 F.2d 193, 203 (5th Cir.1992); *United States v. Bayshore Assocs.*, 934 F.2d 1391, 1395–96 (6th Cir.1991); *Cohen v. Board of Trustees*, 867 F.2d 1455, 1466 (3d Cir. 1989); *International Ass'n of Machinists & Aerospace Workers v. Eastern Airlines, Inc.*, 849 F.2d 1481, 1486 n. 11 (D.C.Cir.1988); *Donovan v. Robbins*, 752 F.2d 1170, 1173–74 (7th Cir.1985); *Cable Holdings of Battlefield, Inc. v. Cooke*, 764 F.2d 1466, 1471 (11th Cir.1985). By contrast, if an order merely has the practical effect of granting or denying an injunction, the *Carson* irreparable injury test must be satisfied. *Kausler*, 989 F.2d at 298.

 In determining whether the district court acted specifically to grant injunctive relief, we examine "the language of the order, the grounds on which it rests, [and] the circumstances in which it was entered." *Kausler*, 989 F.2d at 299. An examination of the district court's order reveals that the district court explicitly granted Morgenstern injunctive relief, and, thus, *Carson* is inapposite. The district court order, styled as "Order for Injunctive Relief," expressly granted the specific injunctive relief prayed for in Morgenstern's complaint. The district court stated that, in accordance with its "equitable powers" under 15 U.S.C. § 26,[1] defendants

"are permanently enjoined as follows: within sixty days after this order becomes final following completion of the appellate process," (1) NHI shall be dissolved, or (2) restructured to eliminate common ownership by cardiologists and surgeons and to prevent joint marketing on behalf of CCPC and CVTS. The district court imposed upon defendants an affirmative obligation, and then stayed that obligation pending appellate review. The district court specifically granted Morgenstern the injunctive relief he requested, and, therefore, we conclude that we have jurisdiction over the present appeal as one coming within the parameters of § 1292(a)(1). Accordingly, we deny Morgenstern's motion to dismiss the appeal.

### III.

We now turn to the merits of defendants' appeal. For reversal, defendants argue that several of the legal theories of anti-competitive conduct that were presented to the jury were erroneous as a matter of law, and that there was insufficient evidence to support the jury's verdict that NHI, and the individual physicians who comprise NHI, violated § 2 of the Sherman Antitrust Act, 15 U.S.C. § 2. Because we conclude that Morgenstern produced insufficient evidence of defendants' anti-competitive power within a well-defined relevant geographic market, we reverse the judgment of the district court.[2]

 To establish that defendants have the market power required for monopoliza-

---

1. 15 U.S.C. § 26 provides, in pertinent part, that any "person, firm, corporation or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws."

2. Our resolution of the issue of the relevant geographic market has made it unnecessary for us to reach all of the issues presented on appeal. Defendants raise several challenges to the theories of liability upon which the present case was submitted to the jury. Defendants first argue that, as a matter of law, a medical referral from one specialist to another is an act of medical judgment and cannot support antitrust liability. Defendants also argue that an actual monopolization claim must be predicated on the market domination of a single defendant or single economic entity and cannot be established by com-

bining the market power of multiple defendants. There is a split in authority on this question. *See generally* Julian O. von Kalinowski, Antitrust Laws and Trade Regulation §§ 17.01[2], 19.06 (1993); II E. Kinter, Federal Antitrust Law, § 16.2, at 482 (1980) (indicating that several firms acting in concert can be guilty of actual monopolization). Defendants further contend that, if this Court recognizes such a joint monopolization claim, it should treat such a claim as a conspiracy to monopolize claim, and, thus, require an agreement among defendants to commit an anti-competitive act. The jury in the present case was not instructed regarding the finding of an agreement. We are cognizant that no circuit has squarely addressed these questions. Even were we to rule in Morgenstern's favor on these issues, defendants would still be entitled to judgment in their favor. We consequently leave resolution of these issues for an appropriate case.

tion liability, Morgenstern had to establish that defendants have "a dominant market share in a well-defined relevant market." *Flegel v. Christian Hosp., Northeast–Northwest,* 4 F.3d 682, 689 (8th Cir.1993) (quoting *Assam Drug Co. v. Miller Brewing Co.,* 798 F.2d 311, 318 (8th Cir.1986)). The "relevant market" is defined in terms of both product market (here, adult cardiac surgery) and geographic market. An actual monopolization claim often succeeds or fails strictly on the definition of the product or geographic market. *Alexander v. National Farmers Organization,* 687 F.2d 1173, 1181 (8th Cir.1982) (citing Julian O. von Kalinowski, Antitrust Laws and Trade Regulation, §§ 8.02[3]c, 9.01[3] (1982) (collecting cases)), *cert. denied,* 461 U.S. 937, 103 S.Ct. 2108, 77 L.Ed.2d 313 (1983).

▬▬ The geographic market encompasses the geographic area to which consumers can practically turn for alternative sources of the product and in which the antitrust defendants face competition. *Baxley–DeLamar Monuments, Inc., v. American Cemetery Ass'n,* 938 F.2d 846, 850 (8th Cir.1991). The burden of establishing that a specified area constitutes a relevant geographic market in a particular case rests with the plaintiff. *United States v. Empire Gas Corp.,* 537 F.2d 296 (8th Cir.1976), *cert. denied,* 429 U.S. 1122, 97 S.Ct. 1158, 51 L.Ed.2d 572 (1977).

▬▬ In the present case, Morgenstern proposed a relevant market of patients of adult cardiac surgery to include Lincoln and twenty-six surrounding Nebraska counties extending in certain directions over 200 miles beyond Lincoln. However, Morgenstern's relevant geographic market excluded the heart programs in Omaha and all other re-gional and national heart programs. Defendants' relevant geographic market included, at a minimum, Omaha. The question before this Court is whether Morgenstern provided sufficient evidence from which the jury could reasonably have found that defendants possessed market power within the relevant geographic market.[3]

▬▬ A close examination of the record reveals that Morgenstern's evidence regarding the relevant geographic market failed to address a critical legal question: where could consumers of the product (adult cardiac surgery) *practicably turn for alternative sources of the product.* See *Tampa Electric Co. v. Nashville Coal Co.,* 365 U.S. 320, 331–32, 81 S.Ct. 623, 630, 5 L.Ed.2d 580 (1961) (defining the relevant geographic area as "the market area in which the seller operates, and to which the purchaser can practicably turn for supplies"). The evidence provided by Morgenstern to support his geographic market definition consisted primarily of expert testimony regarding the residences of the cardiac surgery patients in the Lincoln and Omaha heart surgery programs, and the Nebraska counties that supplied the largest number of patients to each program. Morgenstern's proposed geographic market was also based upon evidence that cardiologists in Lincoln seldom refer their patients to cardiac surgeons in Omaha. Joint Appendix Vol. IV at 1692, 1791. Morgenstern's expert focused upon where Lincoln and Omaha residents *actually* went, as opposed to where they *could* practicably go, for their cardiac surgery services, and specifically presented insufficient evidence regarding whether or not CVTS patients could practicably turn for alternative sources of the product to Omaha or other more distant heart programs. Mor-

---

**3.** Within the relevant geographic market found by the jury (Lincoln and twenty-six surrounding counties, but not including Omaha), defendants possessed close to eighty percent of the market share of the patients. An eighty percent market share is within the permissible range from which an inference of monopoly power can be drawn. If, as defendants contend, the relevant geographic market includes Omaha, then defendants have only a thirty percent market share. As a matter of law, absent other relevant factors, a thirty percent market share will not prove the existence of monopoly power. *See, e.g., Fineman v. Armstrong World Indus., Inc.,* 980 F.2d 171, 201 (3d Cir.1992) (fifty-five percent market share is insuf-

ficient to constitute monopoly power), *cert. denied,* —— U.S. ——, 113 S.Ct. 1285, 122 L.Ed.2d 677 (1993); *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.,* 732 F.2d 480, 489 (5th Cir.1984) (ninety percent is enough, sixty percent is not likely to suffice, and thirty-three is insufficient) (citations omitted); *Lektro–Vend Corp. v. Vendo Co.,* 660 F.2d 255 (7th Cir.1981) (thirty percent market share insufficient), *cert. denied,* 455 U.S. 921, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982); *United States v. Empire Gas Corp.,* 537 F.2d 296 (8th Cir.1976) (forty-seven to fifty percent share in liquid propane gas market held insufficient), *cert. denied,* 429 U.S. 1122, 97 S.Ct. 1158, 51 L.Ed.2d 572 (1977).

 

genstern's expert concluded that Lincoln and Omaha must be in different geographic markets "[b]ecause patients overwhelmingly went to the closest hospital." Brief for Appellee at 20. Morgenstern further provided no evidence that patients viewed Lincoln as a market separate from Omaha, located only fifty-eight miles from Lincoln.

The evidence produced in the present case falls far short of establishing Lincoln and surrounding counties, to the exclusion of Omaha, as the relevant geographic market. By contrast, the record shows that Omaha should have been included in the relevant geographic market definition. The Supreme Court has recognized the importance of distance and its counterpart convenience in determining the relevant geographic market. *See United States v. Philadelphia Nat'l Bank,* 374 U.S. 321, 358, 83 S.Ct. 1715, 1738–39, 10 L.Ed.2d 915 (1963). Defendants' evidence showed that Lincoln residents need travel only fifty-eight miles by main highway to receive cardiac surgical care in Omaha. Morgenstern himself traveled from Lincoln to Omaha on more than thirty occasions in a single year to assist in performing cardiac surgery. The defendants also provided testimony from health care providers in various professions throughout Nebraska who uniformly confirmed the existence of vigorous competition between Lincoln and Omaha. Lincoln cardiologists and cardiac surgeons testified to strong competition between them and the six Omaha heart programs. Joint Appendix Vol. II at 810–18, 904, 979–80; Vol. III at 1174–76, 1215–17, 1466–68. Omaha cardiac surgeons and hospital administrators testified to strong competition from CVTS and the cardiologists of CCPC. Moreover, the evidence showed that, throughout Nebraska, primary care physicians considered both Lincoln and Omaha as feasible sources of healthcare when making recommendations to their patients in need of cardiac surgery services. Joint Appendix Vol. II at 766–72, 775, 935; Vol. III at 1079–83, 1227–28. In Lincoln itself, physicians would refer patients to Omaha if, in their medical judgment, better treatment was available there. Joint Appendix Vol. II at 777–80. Defendants' expert provided further corroborative evidence consisting of three distinct economic studies designed to determine reasonable, practicable

substitutes for Lincoln's residents in need of cardiac surgery services. Each analysis concluded that the relevant geographic market consisted of, at a minimum, Lincoln and Omaha.

Morgenstern argues that market determination, including the relevant geographic market, is necessarily a factual question for the jury, and emphasizes that the jury evidently credited the testimony of Morgenstern's expert and found the relevant geographic market to exclude Omaha. However, "[w]hen an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict." *Brooke Group v. Brown & Williamson Tobacco Co.,* —— U.S. ——, ——, 113 S.Ct. 2578, 2598, 125 L.Ed.2d 168 (1993). Morgenstern has failed to overcome the overwhelming evidence that cardiac surgery programs in Lincoln and Omaha occupy the same relevant geographic market. As discussed above in footnote three, within the properly defined relevant geographic market, no permissible inference of monopoly power can be drawn. Absent monopoly power, Morgenstern's monopoly claim must fail.

Accordingly, we reverse the judgment of the district court.