Alga **MORALES VILLALOBOS,**
Plaintiff,

v.

Miguel **GARCÍA LLORÉNS,**
et al, Defendants.

No. CIV. 99–2034(HL).

United States District Court,
D. Puerto Rico.

March 30, 2001.

Samuel T. Cespedes–Sabater, McConnell Valdes, San Juan, PR, Salvador Antonetti–Zequeira, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for Miguel Garcia–Llorens, Jose Arturo Garcia–Llorens, Manuel Matos, Arecibo Respiratory Care, Inc., defendants.

Samuel T. Cespedes–Sabater, McConnell Valdes, San Juan, PR, Salvador Antonetti–Zequeira, Fiddler, Gonzalez & Rodriguez, San Juan, PR, Juan M. Masini–Soler, San Juan, for Hospital Dr. Susoni Inc., Dr. Susoni Health Community Services Corp., defendants.

## OPINION AND ORDER

LAFFITTE, Chief Judge.

Before the Court is a joint motion by Defendants to dismiss for failure to state a claim. Defendants are Dr. Miguel García Lloréns, Dr. José Arturo García Lloréns, Dr. Manuel Matos, Hospital Dr. Susoni, Inc. ("HDS"), Dr. Susoni Health Community Services, Inc. ("Susoni Health"), and Arecibo Respiratory Care, Inc. ("ARC"). The individual defendants are the sole shareholders of ARC. ARC, in turn, is the majority shareholder of HDS, a hospital in Arecibo. Susoni Health is a subsidiary of HDS and manages the Hospital Regional de Arecibo. Plaintiff is Dr. Alga Morales Villalobos ("Morales"), an anesthesiologist practicing in Arecibo. She brings this claim pursuant to section 1 of the Sherman Antitrust Act.[1] She also brings Puerto Rico law claims under the Court's supplemental jurisdiction.[2] Plaintiff alleges that in 1995 she began working for ARC as an anesthesiologist; as such, she was granted privileges to practice at Hospital Dr. Susoni; that ARC had an exclusive contract to provide anesthesiology services to Hospital

Alvaro R. Calderon–Jr., Hato Rey, PR, for Alga Morales–Villalobos, plaintiff.

1. 15 U.S.C.A. § 1 (West 1997).

2. 28 U.S.C.A. § 1367 (West 1993).

Dr. Susoni; and that when Susoni Health began to manage the Hospital Regional, ARC was also given the exclusive contract to provide that hospital with anesthesiology services. Plaintiff further alleges that in January 1999 ARC fired her and that since the time of her termination she has been denied privileges to practice at Hospital Dr. Susoni. She claims that ARC's exclusive contract is an unreasonable restraint of trade in violation of the antitrust laws.

In their motion to dismiss, Defendants argue that Plaintiff has failed to define the relevant market. Plaintiff has opposed the motion. For the reasons set forth below, the Court grants the motion to dismiss.

## DISCUSSION

In ruling on a Rule 12(b)(6) motion to dismiss, a court must accept all well-pled factual averments as true and must draw all reasonable inferences in the plaintiff's favor. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993); *Carparts Distribution Ctr., Inc. v. Automotive Wholesaler's Ass'n*, 37 F.3d 12, 14 (1st Cir.1994). A court should not dismiss a complaint for failure to state a claim unless it is clear that the plaintiff will be unable to prove any set of facts which would entitle him to recovery. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Miranda v. Ponce Federal Bank*, 948 F.2d 41, 44 (1st Cir.1991). This deferential standard is not a "toothless tiger." *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 190 (1st Cir.1996). The court is not obliged to accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996). For an anti-trust plaintiff to survive a Rule 12(b)(6) motion, she must, like any other plaintiff, plead the essential elements of her claim in more than vague and conclusory terms. *DM Research v. College of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir.1999); *Double D Spotting Service, Inc. v. Supervalu, Inc.*, 136 F.3d 554, 558 (8th Cir.1998); *Estate Constr. v. Miller & Smith Holding Co.*, 14 F.3d 213, 220–21 (4th Cir.1994).

■ The only provision of the anti-trust laws to which Plaintiff cites in her complaint is section 1 of the Sherman Antitrust Act, which prohibits contracts, combinations or conspiracies in restraint of trade. 15 U.S.C.A. § 1. The specific conduct of which Plaintiff complains is Defendants' denying her medical privileges at HDS. Courts have generally applied the rule of reason standard to antitrust claims involving hospital privileges and practices between doctors. *See Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1093 & n. 9 (6th Cir.1996); *BCB Anesthesia Care v. Passavant Mem'l Area Hosp.*, 36 F.3d 664, 667 (7th Cir.1994); *Davies v. Genesis Med. Ctr.*, 994 F.Supp. 1078, 1097 (S.D.Iowa 1998). Indeed, Plaintiff invokes this standard in her opposition to the motion to dismiss.[3] To state a section 1 claim under the rule of reason, a plaintiff must plead (1) concerted conduct by defendants (2) which was illegal, (3) which produced anticompetitive effects within the relevant markets, and (4) which proximately caused plaintiff's injury. *Mathews v. Lancaster Gen. Hosp.*, 87 F.3d 624, 639 (3rd Cir. 1996). To properly plead a restraint of trade under the rule of reason, the complaint must also define the relevant market. *Double D*, 136 F.3d at 558–59; *BCB Anesthesia*, 36 F.3d at 667–69; *Oksanen v. Page Mem'l Hosp.*, 945 F.2d 696, 709 (4th Cir.1991).

3. Docket no. 18, at 8.

■ A relevant market has two elements: a product market and a geographic market. *Coastal Fuels of Puerto Rico v. Caribbean Petroleum*, 79 F.3d 182, 197 & n. 11 (1st Cir.1996); 2 Julian O. von Kalinowski, *Antitrust Laws and Trade Regulation* § 24.01[4], at 24–17 (2d ed.2000). The product market in this case appears to be anesthesiology services. Defendants base their motion to dismiss on a failure to define the geographic market. With regard to this element, Plaintiff's complaint refers only to an "Arecibo region" or "Arecibo area"[4] in which Defendants are alleged to have market power. She does not, however, provide any definition as to the expanse of this region. The relevant geographic market is the area in which sellers of the relevant product compete and in which buyers can practicably turn for alternate sources of supply. *Bathke v. Casey's Gen. Stores*, 64 F.3d 340, 345 (8th Cir.1995); *Coastal Fuels*, 79 F.3d at 196; 2 Von Kalinowski § 24.03[1], at 24–79. The geographic market corresponds to the commercial reality of the industry and represents an economically significant trade area. *Brown Shoe Co. v. United States*, 370 U.S. 294, 336–37, 82 S.Ct. 1502, 1530, 8 L.Ed.2d 510 (1962); *Davies*, 994 F.Supp. at 1100; 2 Von Kalinowski § 24.03[1], at 24–79 to 24–81. Courts have generally not accepted geographic market definitions that are unrealistically narrow. 2 Von Kalinowski § 24.03[1], at 24–82. A market definition must encompass the realities of competition. *Barton & Pittinos, Inc. v. SmithKline Beecham Corp.*, 118 F.3d 178, 183 (3rd Cir.1997); *Oksanen*, 945 F.2d at 709; *Weiss v. York Hosp.*, 745 F.2d 786, 826 (3rd Cir.1984); *Davies*, 994 F.Supp. at 1098. Confining the relevant market to a single hospital will generally be too narrow a definition. *Brader v. Allegheny Gen.*

*Hosp.*, 64 F.3d 869, 879–80 (3rd Cir.1995) (collecting cases); *BCB Anesthesia*, 36 F.3d at 668; *Ginzburg v. Mem'l Healthcare Systems, Inc.*, 993 F.Supp. 998, 1013 (S.D.Tex.1997) (collecting cases); *Flegel v. Christian Hosp. Northeast–Northwest*, 804 F.Supp. 1165, 1174 (E.D.Mo.1992).

■ In the present case, Plaintiff's vague reference to the "Arecibo region," without specifics, makes difficult any further analysis of her claim. Without a definition of the relevant market, it is impossible to determine whether she has also adequately plead the alleged anticompetitive effects of Defendant's conduct. The geographic limits of the "Arecibo region" she mentions is a key ingredient to this determination. The "Arecibo region" could include only Arecibo, or it could extend all the way to San Juan. Moreover, it is not clear from Plaintiff's complaint where patients could turn for alternative health care. This is a critical issue in the definition of a geographic market. *Morgenstern v. Wilson*, 29 F.3d 1291, 1296 (8th Cir.1994); *Davies*, 994 F.Supp. at 1100. Additionally, it is also unclear from the complaint and from Plaintiff's opposition to the motion to dismiss, why patients could not go to other area hospitals—including hospitals in the San Juan metropolitan area—for treatment. *See BCB Anesthesia*, 36 F.3d at 668 ("Nothing in the complaint suggest that patients are foreclosed from going elsewhere in the unlikely event that they are involved in pricing decisions."); *Davies*, 994 F.Supp. at 1101 (Allegations in the complaint must adequately identify a relevant geographic market, taking into consideration "blatant geographic and commercial realities").

4. Docket no. 1, ¶¶ 35, 36, 37, 38. In her opposition to the motion to dismiss, Plaintiff claims that the relevant market is Arecibo. Docket no. 18, at 5. For purposes of this motion to dismiss, however, the Court considers only the allegations in her complaint.

48

Accordingly, the Court grants the motion to dismiss. The Court grants Plaintiff until **April 18, 2001,** to file an amended complaint adequately defining the relevant geographic market. The Court leaves it to Plaintiff to provide the necessary details to her claim. In so doing, her pleadings must be consistent with the commercial realities of the hospital industry. *See Brown Shoe,* 370 U.S. at 336–367, 82 S.Ct. at 1530; *Davies,* 994 F.Supp. at 1101. If she attempts to limit the geographic market only to Arecibo, she should be prepared to address the case law which has drawn a much larger geographic market in cases involving staffing privileges for hospitals. *See BCB Anesthesia,* 36 F.3d at 668 (Noting that complaint failed to explain why patients could not travel to hospitals in a city twenty-five miles away); *Morgenstern,* 29 F.3d at 1296–97 (Relevant market included city fifty-eight miles away); *Davies,* 994 F.Supp. at 1100–01 (Fifty-six miles); *Parikh v. Franklin Med. Ctr.,* 940 F.Supp. 395, 403 (D.Mass.1996) (Hospitals within 45–minute driving time). She should also be prepared to address the issue of why patients in Arecibo cannot go as far away as the San Juan metropolitan area for health care.

The Court notes that whatever the size of the geographic market, Plaintiff must also plead an antitrust injury. The loss to a doctor who has been denied privileges at a hospital will generally be, without more, insufficient to establish such an injury. *BCB Anesthesia,* 36 F.3d at 669 ("A staffing decision does not itself constitute an antitrust injury."); *Balaklaw v. Lovell,* 14 F.3d 793, 797–800 (2nd Cir. 1994); *Oksanen,* 945 F.2d at 708 ("the fact that a hospital's decision caused a disappointed physician to practice medicine elsewhere does not of itself constitute antitrust injury."); *Korshin v. Benedictine Hosp.,* 34 F.Supp.2d 133, 138–39 (N.D.N.Y.

1999); *Baglio v. Baska,* 940 F.Supp. 819, 829–30 (W.D.Pa.1996), *aff'd,* 116 F.3d 467 (3rd Cir.1997) (Unpublished opinion).

Lastly, the Court notes that, although Plaintiff nowhere cites to section 2 of the Sherman Act in her complaint, she does allege that Defendants have monopolized or attempted to monopolize anesthesiology services. Any section 2 claim suffers from the same infirmity as her section 1 claim. That is, a section 2 claim also requires that the relevant geographic market be defined. *See Coastal Fuels,* 79 F.3d at 197; *Gilbuilt Homes, Inc. v. Continental Homes of New England,* 667 F.2d 209, 211 (1st Cir.1981); *Benjamin v. Aroostook Med. Ctr.,* 937 F.Supp. 957, 966–67 n. 6 (D.Me.1996). This she has failed to do.

WHEREFORE, the Court grants Defendants' motion to dismiss (docket nos. 12 & 15). Plaintiff shall have until **April 18, 2001,** to file an amended complaint. If she fails to file an amended complaint by this deadline, the Court will enter judgment dismissing this case.

**IT IS SO ORDERED.**